**NO. _____**

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

IN THE MATTER OF

EHIREMEN BENNARD ERIAKHA,

PETITIONER

ON PETITION FOR A WRIT OF MANDAMUS TO THE

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF MISSISSIPPI, OXFORD DIVISION

IN RE:

CONSOLIDATED CIVIL ACTION NO. 3:25-CV-00226-MPM-JMV

(INCLUDING CASE NO. 3:25-CV-00250-DMB-RP)

EMERGENCY PETITION FOR WRIT OF MANDAMUS

*(28 U.S.C. § 1651(a); Fed. R. App. P. 21)*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned Petitioner certifies that the following persons have an interest in the outcome of this proceeding. This list is provided to enable the judges of this Court to determine whether recusal is required.

**Petitioner**:

Ehiremen Bennard Eriakha

**Respondents / Real Parties in Interest**:

University of Mississippi

Hon. Michael P. Mills, United States District Judge for the Northern District of Mississippi (nominal respondent)

**Counsel for Respondents (District Court)**:

Counsel of record for Defendants in Case No. 3:25-cv-00250, as reflected on the district court docket

There are no publicly held corporations that own 10% or more of the stock of any party to this proceeding.

Respectfully submitted,

/s/ Ehiremen Bennard Eriakha

Ehiremen Bennard Eriakha

Petitioner, pro se

1802 Jackson Ave. W., Apt. 83

Oxford, MS 38655

Tel: (662) 281-4676

Email: eriakhabernard@gmail.com

# TABLE OF CONTENTS

APPENDIX ................................................................................................................ 5

JURISDICTION ....................................................................................................... 7

INTRODUCTION AND SUMMARY ..................................................................... 8

STATEMENT OF RELIEF SOUGHT ..................................................................... 10

ISSUE PRESENTED ................................................................................................ 11

RELEVANT FACTS ................................................................................................ 12

REASONS FOR GRANTING THE WRIT ............................................................. 16

   A.   MANDAMUS IS APPROPRIATE TO COMPEL THE EXERCISE OF JURISDICTION 16

   B.   PETITIONER HAS NO OTHER ADEQUATE MEANS TO OBTAIN RELIEF ........... 17

   C.   PETITIONER HAS A CLEAR AND INDISPUTABLE RIGHT TO A RULING ........... 18

   D.   ISSUANCE OF THE WRIT IS APPROPRIATE UNDER THE CIRCUMSTANCES .... 18

CONCLUSION ......................................................................................................... 20

CERTIFICATE OF SERVICE ................................................................................. 21

CERTIFICATE OF COMPLIANCE ........................................................................ 23

# APPENDIX

## JURISDICTION, PENDENCY, AND DELAY

| | |
|---|---|
| Appendix A | District Court Docket Sheet |
| Appendix B | Motion for Temporary Restraining Order (Doc. 15) |
| Appendix C | Motion for Preliminary Injunction (Doc. 16) |

## BRIEFING COMPLETION

| | |
|---|---|
| Appendix D | Memorandum in Support of Preliminary Injunction (Doc. 23) |
| Appendix E | Declaration in Support of Preliminary Injunction (Doc. 17) |
| Appendix F | Defendants' Opposition to Preliminary Injunction (Doc. 33) |
| Appendix G | Petitioner's Consolidated Reply in Support of PI (Doc. 37) |

## REPEATED NOTICE AND ESCALATION

| | |
|---|---|
| Appendix H | Motion to Expedite (Doc. 46) |
| Appendix I | Defendants' Opposition to Motion to Expedite (Doc. 48) |
| Appendix J | Motion for Prompt Ruling (Doc. 26) |
| Appendix K | Supplemental Notice of PI Ripeness (Doc. 27) |
| Appendix L | Supplemental Notice of Escalating Irreparable Harm (Doc. 41) |
| Appendix M | Notice of Irreparable Harm (Doc. 51) |

## MATERIALIZED AND IRREVERSIBLE HARM

| | |
|---|---|
| Appendix N | Exhibit to Notice of Irreparable Harm: Notice of Academic Termination |
| Appendix O | Email Correspondence Documenting Downstream Consequences of Expulsion |

Appendix P                                ISSS/F-1 Status Notification

## JURISDICTION

This Court has jurisdiction under the ***All Writs Act, 28 U.S.C. § 1651(a)***, and ***Federal Rule of Appellate Procedure 21*** to issue writs of mandamus in aid of its jurisdiction.

This petition seeks supervisory mandamus directing the United States District Court for the Northern District of Mississippi to rule on pending, fully briefed motions for emergency injunctive relief. Petitioner does not seek merits relief from this Court and does not request that this Court dictate the outcome of any motion pending below.

Mandamus jurisdiction is proper because the district court has jurisdiction over Petitioner's underlying civil-rights action, emergency relief has been properly invoked, and the district court's continued failure to act is producing irreversible consequences that cannot be remedied through ordinary appeal.

## INTRODUCTION AND SUMMARY

This is an emergency petition for supervisory mandamus seeking a narrow, procedural order directing the United States District Court for the Northern District of Mississippi to rule on pending motions for emergency injunctive relief.

Petitioner does not ask this Court to adjudicate the merits of the underlying dispute, to grant or deny injunctive relief, or to dictate how the district court should rule. The sole relief sought is a prompt ruling on motions that have been fully briefed for months, expressly brought to the district court's attention through a motion to expedite, and repeatedly accompanied by notice that delay itself would cause irreversible harm.

Despite this posture, the district court has taken no action on the pending motions. During the period of non-adjudication, the precise harms the emergency motions sought to prevent have materialized, including the termination of Petitioner's academic enrollment and the initiation of date-certain immigration consequences that cannot be undone through later appeal.

Mandamus is appropriate because the district court has jurisdiction over the case and the emergency motions, the record is complete, no alternative avenue of relief exists, and continued inaction has allowed time-sensitive rights to be extinguished without

adjudication. Petitioner seeks only that the district court exercise its jurisdiction by ruling.

## STATEMENT OF RELIEF SOUGHT

Petitioner respectfully requests that this Court issue a writ of mandamus directing the United States District Court for the Northern District of Mississippi to promptly rule on Petitioner's pending motions for a Temporary Restraining Order and Preliminary Injunction.

Petitioner does not ask this Court to adjudicate the merits of those motions, to grant or deny injunctive relief, or to prescribe any particular outcome. The sole relief sought is a prompt ruling by the district court.

Given the emergency posture of the case and the date-certain, irreversible consequences already in motion, Petitioner further requests expedited consideration of this petition.

## ISSUE PRESENTED

Whether a writ of mandamus should issue directing the United States District Court for the Northern District of Mississippi to promptly rule on Petitioner's pending motions for a Temporary Restraining Order and Preliminary Injunction, where:

1. The emergency Rule 65 motions were properly filed, refiled, and cured of procedural defects, and invoke the district court's jurisdiction;

2. Briefing has been complete since October 9, 2025, and Defendants have conceded that the motions are fully briefed and may be decided on the papers;

3. Petitioner repeatedly notified the district court of escalating and now-materialized irreparable harm;

4. During this same period, the district court exercised jurisdiction in other respects—including granting consolidation and issuing stays—while leaving emergency Rule 65 relief unaddressed; and

5. The district court's continued inaction has permitted the imminent and irreversible loss of lawful status and associated rights, for which no post-judgment appeal can provide an adequate remedy.

## RELEVANT FACTS

### 1.  Underlying action and jurisdiction

Petitioner Ehiremen Bennard Eriakha is the plaintiff in a civil-rights action originally filed in the United States District Court for the Northern District of Mississippi, Case No. 3:25-cv-00250-DMB-RP, now consolidated into Case No. 3:25-cv-00226-MPM-JMV, and assigned to Judge Michael P. Mills. The district court has subject-matter jurisdiction over the action and authority to adjudicate Petitioner's requests for emergency relief.

### 2.  Filing of emergency motions

On September 8, 2025, Petitioner filed motions for a Temporary Restraining Order and Preliminary Injunction under Federal Rule of Civil Procedure 65, supported by a sworn declaration and exhibits. On September 11, 2025, the district court denied those motions without prejudice on procedural grounds.

### 3.  Procedural defects cured; motions refiled

On September 18, 2025, Petitioner refiled corrected motions for a Temporary Restraining Order and Preliminary Injunction, curing the procedural defects identified by the district court and expressly seeking preservation of the status quo pending adjudication.

### 4.  Full briefing completed

Defendants opposed the motions. Petitioner filed a consolidated reply on October 9, 2025. No further briefing was ordered or required. Defendants later conceded that the motions were "fully briefed" and "may be decided on the papers."

## 5.  Repeated notice of irreparable harm

Between September and November 2025, Petitioner filed multiple notices and supplemental submissions expressly advising the district court that the harms identified in the emergency Rule 65 motions were escalating, time-sensitive, and would become irreversible absent prompt adjudication. On November 3, 2025, Petitioner filed a Motion to Expedite, specifically requesting that the district court rule on the pending emergency motions in light of the imminent consequences of continued delay.

## 6.  Selective procedural action; no ruling on emergency relief

While the motions for a Temporary Restraining Order and Preliminary Injunction remained pending, the district court exercised jurisdiction in other respects, including staying discovery based on Defendants immunity assertions on October 02, 2025 and granting Defendants motion for consolidation of related cases on November 17, 2025.

Despite repeated notice of escalating and now-materialized irreparable harm, the district court did not rule on the pending TRO, Preliminary Injunction, or Motion to Expedite.

## 7. Irreparable harm materialized

On December 12, 2025, while Petitioner's emergency motions remained pending and unresolved, Petitioner received formal notice that he was permanently terminated from his Ph.D. program, reclassified as non-degree-seeking, and rendered ineligible for tuition remission and assistantship support, effective December 15, 2025.

## 8. Petitioner notified the court immediately

Petitioner's Notice of Irreparable Harm advised the district court that, on December 12, 2025, Petitioner was permanently terminated from the Ph.D. program, effective December 15, 2025, and reclassified as non-degree-seeking, while his motions for a Temporary Restraining Order and Preliminary Injunction remained pending and unresolved. The notice identified the resulting loss of enrollment, tuition remission, assistantship compensation, and academic standing as consequences occurring during the pendency of the unresolved emergency motions.

## 9. Immigration consequences triggered

On December 15, 2025, the University's International Student and Scholar Services notified Petitioner that, as a result of his change in academic status, his F-1 immigration status would be terminated absent compliance by January 5, 2026, including submission of new financial documentation or transfer of his SEVIS record.

**10. No ruling to date**

As of the filing of this petition on December 17, 2025, Petitioner's motions for emergency relief have remained pending without ruling for approximately seventy days since full briefing was completed on October 9, 2025, and more than six weeks since the Motion to Expedite was filed, during which time the consequences identified in the emergency motions have materialized and continue to unfold.

## REASONS FOR GRANTING THE WRIT

### A. MANDAMUS IS APPROPRIATE TO COMPEL THE EXERCISE OF JURISDICTION

Mandamus is appropriate where a district court fails to exercise jurisdiction over matters properly before it. While district courts retain discretion as to how they rule, they do not possess discretion to decline to rule indefinitely on motions invoking their jurisdiction—particularly where emergency relief is sought and delay defeats the remedy.

Here, the district court has jurisdiction over Petitioner's case and undisputed authority to decide the pending Rule 65 motions. Those motions were properly filed, cured of procedural defects, fully briefed, and expressly brought to the court's attention through a Motion to Expedite. During the period in which those motions have remained unresolved, the consequences identified in the emergency filings have materialized.

Under these circumstances, continued non-adjudication constitutes a failure to exercise jurisdiction that warrants supervisory mandamus.

## B. PETITIONER HAS NO OTHER ADEQUATE MEANS TO OBTAIN RELIEF

Petitioner satisfies the first mandamus prerequisite because no adequate alternative remedy exists. There is no appealable order granting or denying emergency relief, and interlocutory appeal under 28 U.S.C. § 1292(b) is unavailable absent district-court certification, which has not occurred.

Moreover, the harms at issue—including loss of academic enrollment, funding, and lawful immigration status—cannot be undone by later appellate review. Once Petitioner's F-1 status is terminated or his SEVIS record is transferred, the status quo ante cannot be restored. Mandamus is therefore the only avenue through which Petitioner may obtain meaningful relief.

In addition, the passage of time has now so compressed the remaining window for review that ordinary appellate remedies are no longer adequate in any practical sense. Even if the district court were to issue a ruling immediately, Petitioner would be required to seek emergency appellate relief before imminent, date-certain consequences take effect in January. An appellate remedy that cannot be meaningfully pursued before the challenged harms become irreversible is not an "adequate" alternative within the meaning of mandamus doctrine. The present posture thus threatens not only Petitioner's substantive rights, but the availability of effective appellate review itself.

## C. PETITIONER HAS A CLEAR AND INDISPUTABLE RIGHT TO A RULING

Petitioner does not assert a right to any particular outcome. The right asserted is far narrower: the right to a ruling on properly presented, fully briefed emergency motions invoking the district court's equitable jurisdiction.

Defendants have conceded ripeness and the absence of any need for further briefing or hearing. Under these circumstances, the district court's duty to rule is clear and indisputable. While the district court retains discretion as to the substance of its ruling, it has a nondiscretionary obligation to adjudicate motions properly invoking its jurisdiction, particularly where continued delay permits irreparable harm to unfold without adjudication.

## D. ISSUANCE OF THE WRIT IS APPROPRIATE UNDER THE CIRCUMSTANCES

Issuing the writ in this case would be minimally intrusive and fully consistent with traditional mandamus principles. Petitioner asks only that this Court direct the district court to promptly rule.

The emergency posture of the case, the date-certain and irreversible consequences already in motion, and the absence of any other adequate remedy render issuance of the writ appropriate. While the district court has taken other discretionary actions—

including stays and consolidation—emergency Rule 65 relief remains unresolved. Where delay has now produced the precise harms Rule 65 exists to prevent, supervisory intervention is warranted to ensure that jurisdiction is exercised.

## CONCLUSION

For the foregoing reasons, Petitioner Ehiremen Bennard Eriakha respectfully requests that this Court issue a writ of mandamus directing the United States District Court for the Northern District of Mississippi to promptly rule on Petitioner's pending motions for a Temporary Restraining Order and Preliminary Injunction, and that this petition be considered on an expedited basis.

# CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 21(a)(1), Fed. R. App. P. 25(d), and 5th Cir. R. 25.2.5, I hereby certify that on December 17, 2025, I served a true and correct copy of the foregoing Emergency Petition for Writ of Mandamus as follows:

**By email**:

**Clerk's Office**

United States Court of Appeals for the Fifth Circuit

Email: pro_se@ca5.uscourts.gov

Counsel for Respondents (District Court):

**Paul B. Watkins**, **Esq**.

Mayo Mallette PLLC

Email: pwatkins@mayomallette.com

(cc: Brooke Jackson, bjackson@mayomallette.com)

**By hand delivery**:

United States District Court for the Northern District of Mississippi

Clerk of Court

For delivery to the Chambers of the Honorable Michael P. Mills

Oxford, Mississippi


Executed this 17th day of December, 2025, in Oxford, Mississippi.


/s/ Ehiremen Bennard Eriakha

Ehiremen Bennard Eriakha

Petitioner, pro se

1802 Jackson Ave. W., Apt. 83

Oxford, MS 38655

Tel: (662) 281-4676

Email: eriakhabernard@gmail.com

## CERTIFICATE OF COMPLIANCE

This Emergency Petition for Writ of Mandamus complies with the type-volume limitation of *Fed. R. App. P. 21(d)* because it contains fewer than 7,800 words, excluding the parts of the petition exempted by *Fed. R. App. P. 32(f)*.

This petition also complies with the typeface and type-style requirements of *Fed. R. App. P. 32(a)(5)–(6)* and *5th Cir. R. 32.1* because it has been prepared in a proportionally spaced serif typeface using Microsoft Word in 14-point Times New Roman font. Any footnotes are in 12-point font or larger.

I further certify that any required redactions have been made in compliance with *5th Cir. R. 25.2.13*.

Executed this 17th day of December, 2025, in Oxford, Mississippi.

/s/ Ehiremen Bennard Eriakha

Ehiremen Bennard Eriakha

Petitioner, pro se

1802 Jackson Ave. W., Apt. 83

Oxford, MS 38655

Tel: (662) 281-4676

Email: eriakhabernard@gmail.com

# APPENDIX A



## Eriakha v. University of Mississippi et al

⊕ Dashboard

---

**Mississippi Northern District Court**

| | |
|---|---|
| **Judge:** | Michael P Mills |
| **Referred:** | Jane M Virden |
| **Case #:** | 3:25-cv-00250 |
| **Nature of Suit** | 440 Civil Rights - Other Civil Rights |
| **Cause** | 28:1331 Fed. Question: Other Civil Rights |
| **Case Filed:** | Aug 25, 2025 |

Docket    Parties (6)    News

---

Last checked: **Thursday Oct 09, 2025 2:29 AM CDT**       Update Parties ⟳

**Defendant**
Dr. Marie Barnard

**Represented By**
Paul Bowie Watkins, Jr.
*Mayo Mallette PLLC*
662-236-0055
pwatkins@mayomallette.com

---

**Defendant**
Dr. Yinan Huang

**Represented By**
Paul Bowie Watkins, Jr.
*Mayo Mallette PLLC*
662-236-0055
pwatkins@mayomallette.com

---

**Defendant**
Dr. Annette Kluck

**Represented By**
Paul Bowie Watkins, Jr.
*Mayo Mallette PLLC*
662-236-0055
pwatkins@mayomallette.com

---

**Defendant**
University of Mississippi

**Represented By**
Paul Bowie Watkins, Jr.
*Mayo Mallette PLLC*
662-236-0055
pwatkins@mayomallette.com

**Defendant**
Dr. Yi Yang

**Represented By**
Paul Bowie Watkins, Jr.
*Mayo Mallette PLLC*
662-236-0055
pwatkins@mayomallette.com

**Plaintiff**
Ehiremen Bennard Eriakha
1802 Jackson Avenue West Apartment 83
Oxford, MS 38655

---

**✛ Navigation**                                             **⏰ Create Alert**

Docket last updated: 9 minutes ago    ⟳ Update Now

## Friday, December 12, 2025

52 ☆ 🖫 `notice` `Notice (Other)` `Fri 12/12 1:13 PM`
NOTICE of Material Change in Circumstances and Record Preservation by Omokhodion Alfred EriakhaAssociated Cases: 3:25-cv-00226-MPM-JMV, 3:25-cv-00250-MPM-JMV (jla)

Att: 1 🖫 Exhibit

51 ☆ 🖫 `notice` `Notice (Other)` `Fri 12/12 1:10 PM`
NOTICE of Irreparable Harm by Ehiremen Bennard EriakhaAssociated Cases: 3:25-cv-00226-MPM-JMV, 3:25-cv-00250-MPM-JMV (jla)

Att: 1 🖫 Exhibit

## Wednesday, November 19, 2025

50 ☆ 🖫 `respm` `Reply to Response to Motion` `Wed 11/19 10:55 AM`
REPLY to Response to Motion re (31 in 3:25-cv-00226-MPM-JMV, 31 in 3:25-cv-00226-MPM-JMV) MOTION to Dismiss for Lack of Jurisdiction Amended Complaint MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM Amended Complaint filed by Marie Barnard, Erin Holmes, Annette Kluck, Meagen Rosenthal, Jennifer Simmons, University of Mississippi, Yi Yang. Associated Cases: 3:25-cv-00226-MPM-JMV, 3:25-cv-00250-MPM-JMV (Watkins, Paul)

## Monday, November 17, 2025

**49** ☆ | 7 pgs | order | Order on Motion to Consolidate Cases | Mon 11/17 3:53 PM

ORDER granting (28) Motion to Consolidate Cases in case 3:25-cv-00226-MPM-JMV; granting (42) Motion to Consolidate Cases in case 3:25-cv-00250-DMB-RP. Signed by Magistrate Judge Jane M. Virden on 11/17/2025. Associated Cases: 3:25-cv-00226-MPM-JMV, 3:25-cv-00250-DMB-RP (jla)

**48** ☆ | respm | Response in Opposition to Motion | Mon 11/17 3:28 PM

RESPONSE in Opposition re46 MOTION to Expedite filed by Marie Barnard, Yinan Huang, Annette Kluck, University of Mississippi, Yi Yang. (Watkins, Paul)

| utility | Case Assigned/Reassigned | Mon 11/17 3:57 PM

Case reassigned to Senior Judge Michael P. Mills and Magistrate Judge Jane M. Virden. District Judge Debra M. Brown, Magistrate Judge Roy Percy no longer assigned to the case. (jla)

## Thursday, November 06, 2025

**47** ☆ | respm | Reply to Response to Motion | Thu 11/06 2:26 PM

REPLY to Response to Motion re42 MOTION to Consolidate Cases filed by Marie Barnard, Yinan Huang, Annette Kluck, University of Mississippi, Yi Yang. (Watkins, Paul)

## Monday, November 03, 2025

**46** ☆ | motion | Expedite | Mon 11/03 2:04 PM

MOTION to Expedite Ruling on Pending Urgent15 MOTION for Temporary Restraining Order and16 MOTION for Preliminary Injunction by Ehiremen Bennard Eriakha. (jla)

## Thursday, October 30, 2025

**45** ☆ | 6 pgs | notice | Notice (Other) | Thu 10/30 12:04 PM

NOTICE of Prior Non-Consent and Procedural Clarification by plaintiff re42 MOTION to Consolidate Cases (jla)

## Thursday, October 23, 2025

## Wednesday, October 22, 2025

**43** ☆ | 10 pgs | misc | Memorandum in Support | Wed 10/22 5:03 PM

MEMORANDUM IN SUPPORT re42 MOTION to Consolidate Cases filed by Marie Barnard, Yinan Huang, Annette Kluck, University of Mississippi, Yi Yang. (Watkins, Paul)

**42** ☆ | motion | Consolidate Cases | Wed 10/22 5:02 PM

MOTION to Consolidate Cases by Marie Barnard, Yinan Huang, Annette Kluck, University of Mississippi, Yi Yang. (Watkins, Paul)

Att: 1 Exhibit 1 - Email from Alfred to Watkins, Oct. 15, 2025,

Att: 2 Exhibit 2 - Email from Bennard to Watkins, Oct. 15, 2025,

Att: 3 Exhibit 3 - Email from Alfred to Watkins, Oct. 15, 2025

## Friday, October 17, 2025

**41** ☆ | 4 pgs | notice | Notice (Other) | Fri 10/17 2:21 PM
SUPPLEMENTAL NOTICE of Continuing and Escalating Irreparable Harm by Ehiremen Bennard Eriakha (jla)

Att: 1 Exhibit 03 - Second Bursar Notice - Institutional Holds,

Att: 2 | 3 pgs | Exhibit 04 - Civil Rent Complaint/Warrant for Removal at Plaintiff's Residence

## Thursday, October 16, 2025

**40** ☆ | 8 pgs | respm | Reply to Response to Motion | Thu 10/16 4:26 PM
REPLY to Response to Motion re28 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM MOTION to Dismiss for Lack of Jurisdiction filed by Marie Barnard, Yinan Huang, Annette Kluck, University of Mississippi, Yi Yang. (Watkins, Paul)

## Thursday, October 09, 2025

**39** ☆ | notice | Notice (Other) | Thu 10/09 2:47 PM
NOTICE of Procedural Concern (rcm)

Att: 1 Exhibit Consolidation Attempt,

Att: 2 Exhibit Chamber Call Correspondence

**38** ☆ | respm | Response in Opposition to Motion | Thu 10/09 2:41 PM
RESPONSE in Opposition re19 MOTION for Leave to Exceed Page Limit filed by Ehiremen Bennard Eriakha. (rcm)

**37** ☆ | respm | Response in Support of Motion | Thu 10/09 2:35 PM
REPLY in Support re15 MOTION for Temporary Restraining Order,16 MOTION for Preliminary Injunction filed by Ehiremen Bennard Eriakha. (rcm)

**36** ☆ | respm | Response in Opposition to Motion | Thu 10/09 2:29 PM
RESPONSE in Opposition re28 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM MOTION to Dismiss for Lack of Jurisdiction filed by Ehiremen Bennard Eriakha. (jwr)

Att: 1 Exhibit Y: Developmental Mentor Alteration Correspondence

## Thursday, October 02, 2025

**35** ☆ | respm | Response in Opposition to Motion | Thu 10/02 3:51 PM
RESPONSE in Opposition re19 MOTION for Leave to Exceed Page Limit re16 MOTION for Preliminary Injunction filed by Marie Barnard, Yinan Huang, Annette Kluck, University of Mississippi, Yi Yang. (Watkins, Paul)

**34** | 9 pgs | misc | Memorandum in Support | Thu 10/02 3:50 PM
MEMORANDUM IN SUPPORT re33 Response in Opposition to Motion filed by Marie Barnard, Yinan Huang, Annette Kluck, University of Mississippi, Yi Yang. (Watkins, Paul)

| 33 | respm | Response in Opposition to Motion | Thu 10/02 3:49 PM |

RESPONSE in Opposition re16 MOTION for Preliminary Injunction filed by Marie Barnard, Yinan Huang, Annette Kluck, University of Mississippi, Yi Yang. (Watkins, Paul)

| 32 | 9 pgs | misc | Memorandum in Support | Thu 10/02 3:48 PM |

MEMORANDUM IN SUPPORT re31 Response in Opposition to Motion filed by Marie Barnard, Yinan Huang, Annette Kluck, University of Mississippi, Yi Yang. (Watkins, Paul)

| 31 | respm | Response in Opposition to Motion | Thu 10/02 3:46 PM |

RESPONSE in Opposition re15 MOTION for Temporary Restraining Order filed by Marie Barnard, Yinan Huang, Annette Kluck, University of Mississippi, Yi Yang. (Watkins, Paul)

| 30 | 1 pgs | order | Order Staying Case | Thu 10/02 9:45 AM |

ORDER STAYING CASE PENDING RULING ON IMMUNITY MOTION. Signed by Magistrate Judge Roy Percy on 10/2/25. (bnd)

## Wednesday, October 01, 2025

| 29 | 20 pgs | misc | Memorandum in Support | Wed 10/01 5:06 PM |

MEMORANDUM IN SUPPORT re28 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM MOTION to Dismiss for Lack of Jurisdiction filed by Marie Barnard, Yinan Huang, Annette Kluck, University of Mississippi, Yi Yang. (Watkins, Paul)

| 28 | motion | Dismiss for Failure to State a Claim Dismiss/Lack of Jurisdiction | Wed 10/01 5:05 PM |

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , MOTION to Dismiss for Lack of Jurisdiction by Marie Barnard, Yinan Huang, Annette Kluck, University of Mississippi, Yi Yang. (Watkins, Paul)

## Thursday, September 25, 2025

| 27 | notice | Notice (Other) | Thu 09/25 11:10 AM |

SUPPLEMENTAL NOTICE by plaintiff regarding Ripeness of Renewed Motion for Temporary Restraining Order and Preliminary Injunction (jla)

| 26 | motion | Miscellaneous Relief (Other) | Thu 09/25 11:08 AM |

MOTION to Preserve Jurisdiction and Adjudicate Pending Emergency Motion for Temporary Restraining Order and Preliminary Injunction by Ehiremen Bennard Eriakha. (jla)

| 25 | notice | Notice (Other) | Thu 09/25 11:00 AM |

NOTICE by plaintiff of Non-Consent to Consolidation and Statement of Prejudice (jla)

| 24 | notice | Notice of Attorney Appearance | Thu 09/25 9:44 AM |

NOTICE of Attorney Appearance by Paul Bowie Watkins, Jr on behalf of Marie Barnard, Yinan Huang, Annette Kluck, University of Mississippi, Yi Yang (Watkins, Paul)

## Friday, September 19, 2025

**23**  ☆  | 30+ pgs | | misc | | Memorandum in Support | | Fri 09/19 3:17 PM |
MEMORANDUM IN SUPPORT re16 MOTION for Preliminary Injunction filed by Ehiremen Bennard Eriakha. (jla)

---

**Thursday, September 18, 2025**

**20**  ☆  | motion | | Miscellaneous Relief (Other) | | Thu 09/18 5:15 PM |
MOTION to Waive or Reduce Security Requirement under Rule 65(C) re16 MOTION for Preliminary Injunction,15 MOTION for Temporary Restraining Order by Ehiremen Bennard Eriakha. (jla)

---

**19**  ☆  | motion | | Miscellaneous Relief (Other) | | Thu 09/18 5:14 PM |
MOTION for Leave to Exceed Page Limit re16 MOTION for Preliminary Injunction by Ehiremen Bennard Eriakha. (jla)

---

**18**  ☆  | utility | | Remark | | Thu 09/18 5:12 PM |
PLAINTIFF'S Verified Pleading Declaration re1 COMPLAINT (jla)

---

**17**  ☆  | misc | | Affidavit | | Thu 09/18 5:11 PM |
DECLARATION of Ehiremen Bennard Eriakha in Support re16 MOTION for Preliminary Injunction,15 MOTION for Temporary Restraining Order. (jla)

---

**16**  ☆  | motion | | Preliminary Injunction | | Thu 09/18 5:09 PM |
URGENT AND NECESSITIOUS RENEWED MOTION for Preliminary Injunction by Ehiremen Bennard Eriakha. (jla)

---

**15**  ☆  | motion | | Temporary Restraining Order | | Thu 09/18 5:08 PM |
URGENT AND NECESSITIOUS RENEWED MOTION for Temporary Restraining Order by Ehiremen Bennard Eriakha. (jla)

---

**14**  ☆  | motion | | Miscellaneous Relief (Other) | | Thu 09/18 5:05 PM |
MOTION to Correct the Record by Ehiremen Bennard Eriakha. (jla)

Att: 1  | 65 pgs | Declaration of Ehirement Bennard Eriakha

---

**Monday, September 15, 2025**

| service | | Summons Returned Executed | | Mon 09/15 10:32 AM |
SUMMONS Returned Executed Marie Barnard served on 9/10/2025; Yinan Huang served on 9/10/2025; Annette Kluck served on 9/10/2025; University of Mississippi served on 9/10/2025; Yi Yang served on 9/10/2025. (jla)

---

**Thursday, September 11, 2025**

**13**  ☆  | 9 pgs | | order | | Order on Motion for TRO Order on Motion for Preliminary Injunction Order on Motion for Miscellaneous Relief |
| Thu 09/11 9:27 AM |
ORDER denying without prejudice7 URGENT AND NECESSITOUS Motion for Temporary Restraining Order; denying without prejudice9 URGENT AND NECESSITOUS Motion for Preliminary Injunction; denying without prejudice10 Motion for Leave to Exceed Page Limit; denying without prejudice12 Motion to Waive or Reduce Security Requirement under Rule 65(C). Signed by District Judge Debra M. Brown on 9/11/2025. (lld)

---

**Monday, September 08, 2025**

**12** ⭐ 🔀 | motion | | Miscellaneous Relief (Other) | | Wed 09/10 9:11 AM |
MOTION to Waive or Reduce Security Requirement under Rule 65(C) re9 MOTION for Preliminary Injunction,7 MOTION for Temporary Restraining Order by Ehiremen Bennard Eriakha. (jla)

**11** ⭐ 🔀 | misc | | Affidavit | | Mon 09/08 6:07 PM |
Declaration of Ehiremen Bennard Eriakha in Support re9 MOTION for Preliminary Injunction,7 MOTION for Temporary Restraining Order. (jla)

**10** ⭐ 🔀 | motion | | Miscellaneous Relief (Other) | | Mon 09/08 6:05 PM |
MOTION for Leave to Exceed Page Limit re9 MOTION for Preliminary Injunction by Ehiremen Bennard Eriakha. (jla)

**9** ⭐ 🔀 | motion | | Preliminary Injunction | | Mon 09/08 6:03 PM |
URGENT AND NECESSITOUS MOTION for Preliminary Injunction by Ehiremen Bennard Eriakha. (jla)

    Att: 1 🔀 Exhibit A - Signed Mentor/Mentee Agreement Form,

    Att: 2 🔀 Exhibit B - Email Thread on Abilities Transcript,

    Att: 3 🔀 Exhibit C - Retaliation Threat Regarding Abilities Transcript,

    Att: 4 🔀 Exhibit D - Formal Response to Abilities Transcript Threats,

    Att: 5 🔀 Exhibit E - Email Thread on Abilities Transcript,

    Att: 6 🔀 Exhibit F - Email Thread on Dr. Yinan Huang Attempting to Reframe Meeting,

    Att: 7 🔀 Exhibit G - Email Thread Regarding Pretextual Teaching Assisstant Role,

    Att: 8 🔀 Exhibit H - Teaching Assisstant Coordinator Reach Out,

    Att: 9 🔀 Exhibit I - Teaching Assisstant Coordinator Reach Out (2),

    Att: 10 🔀 Exhibit J - Provisional Status Recommendation,

    Att: 11 🔀 Exhibit K - Provisional Status Recommendation,

    Att: 12 🔀 Exhibit L - Graduate Research Assisstantship Termination by Dr. Yi Yang (Department Chair),

    Att: 13 🔀 Exhibit M - Ratification of Provision Status by Dr. Annette Kluck (Dean of Graduate School),

    Att: 14 🔀 Exhibit N - Formal Complaint Submitted to Office of Civil Rights (Department of Education),

    Att: 15 🔀 Exhibit o,

    Att: 16 🔀 Exhibit P - Abilities Transcript Form,

    Att: 17 🔀 Exhibit Q - Abilities Transcript Guide,

    Att: 18 🔀 Exhibit R - University of Mississippi M-Book (Governing Student Discipline Policies),

    Att: 19 🔀 Exhibit S - 2024/2025 Department Policies and Procedures Document,

    Att: 20 🔀 | 2 pgs | Exhibit T - Selective Retroactive Rewording of Procedural Safeguard,

    Att: 21 🔀 Exhibit Z5 - Timeline Showing Selective and Retroactive Rewording of Policy Safeguard

**8** ⭐ 🔀 | notice | | Notice (Other) | | Mon 09/08 5:57 PM |
Plaintiff's CERTIFICATION of Notice pursuant to FRCP 65(B)(1)(B) re7 MOTION for Temporary Restraining Order (jla)

**7** ☆ 🖪 | motion | | Temporary Restraining Order | | Mon 09/08 5:54 PM |

URGENT AND NECESSITOUS MOTION for Temporary Restraining Order by Ehiremen Bennard Eriakha. (jla)

Att: 1 🖪 Exhibit A - Signed Mentor/Mentee Agreement Form,

Att: 2 🖪 Exhibit B - Email Thread on Abilities Transcript,

Att: 3 🖪 Exhibit C - Retaliation Threat Regarding Abilities Transcript,

Att: 4 🖪 Exhibit D - Formal Response to Abilities Transcript Threats,

Att: 5 🖪 Exhibit E - Email Thread on Abilities Transcript,

Att: 6 🖪 Exhibit F - Email Thread on Dr. Yinan Huang Attempting to Reframe Meeting,

Att: 7 🖪 Exhibit G - Email Thread Regarding Pretextual Teaching Assisstant Role,

Att: 8 🖪 Exhibit H - Teaching Assisstant Coordinator Reach Out,

Att: 9 🖪 Exhibit I - Teaching Assisstant Coordinator Reach Out (2),

Att: 10 🖪 Exhibit J - Provisional Status Recommendation,

Att: 11 🖪 Exhibit K - Provisional Status Recommendation,

Att: 12 🖪 Exhibit L - Graduate Research Assisstantship Termination by Dr. Yi Yang (Department Chair),

Att: 13 🖪 Exhibit M - Ratification of Provision Status by Dr. Annette Kluck (Dean of Graduate School),

Att: 14 🖪 Exhibit N - Formal Complaint Submitted to Office of Civil Rights (Department of Education),

Att: 15 🖪 Exhibit O - Differential Treatment in Mentor Assignment,

Att: 16 🖪 Exhibit P - Abilities Transcript Form,

Att: 17 🖪 Exhibit Q - Abilities Transcript Guide,

Att: 18 🖪 Exhibit R - University of Mississippi M-Book (Governing Student Discipline Policies),

Att: 19 🖪 Exhibit S - 2024/2025 Department Policies and Procedures Document,

Att: 20 🖪 Exhibit T - Selective Retroactive Rewording of Procedural Safeguard,

Att: 21 🖪 Exhibit Z5 - Timeline Showing Selective and Retroactive Rewording of Policy Safeguard

### Thursday, August 28, 2025

**6** ☆ 🖪 | service | | Summons Issued | | Thu 08/28 1:32 PM |

Summons Issued as to Marie Barnard, Yinan Huang, Annette Kluck, University of Mississippi, Yi Yang. Forwarded to USM for service. (jla)

### Wednesday, August 27, 2025

**5** ☆ 🖪 | 1 pgs | | order | | Order on Motion to Proceed In Forma Pauperis | | Wed 08/27 6:47 PM |

ORDER granting2 Motion for Leave to Proceed in forma pauperis. Signed by Magistrate Judge Roy Percy on 8/27/25. (bnd)

### Monday, August 25, 2025



4    ☆    | notice | | Notice of Assignment (Pro Se) | | Mon 08/25 3:31 PM |
NOTICE OF ASSIGNMENT. Case assigned to Judge Brown and Magistrate Judge Percy. (jla)

3    ☆    | notice | | Notice (Other) | | Mon 08/25 3:30 PM |
NOTICE of Related Case: 3:25-CV-26-MPM-JMV (jla)

2    ☆    | motion | | Proceed In Forma Pauperis | | Mon 08/25 3:29 PM |
MOTION to Proceed in forma pauperis by Ehiremen Bennard Eriakha. (jla)

1    ☆    | 33 pgs | | cmp | | Complaint | | Mon 08/25 3:26 PM |
COMPLAINT, Jury Demand,, filed by Ehiremen Bennard Eriakha. (jla)

Att: 1   Civil Cover Sheet

**Showing**     All

**Last viewed: Dec 13, 2025 12:09 AM CST**

# APPENDIX B

## UNITED STATES DISTRICT COURT

for the

Northern District of Mississippi

Oxford Division

| | | |
|---|---|---|
| Ehiremen Bennard Eriakha | ) | Case No.    3:25-cv-00250 |
| *Plaintiff(s)* | ) | |
| **-v-** | ) | |
| | ) | |
| University of Mississippi; Dr. Yi Yang; Dr. | ) | |
| Marie Barnard; Dr. Annette Kluck; Dr. Yinan | ) | |
| Huang | ) | |
| *Defendant(s)* | ) | |

**URGENT AND NECESSITOUS RENEWED MOTION FOR TEMPORARY**

**RESTRAINING ORDER**

## INTRODUCTION AND RELIEF REQUESTED

COMES NOW Plaintiff Ehiremen Bennard Eriakha, appearing pro se and in forma pauperis, and respectfully moves this Court pursuant to *Fed. R. Civ. P. 65(b)* and *L.U. Civ. R. 7* for entry of a Temporary Restraining Order ("TRO") preserving the status quo ante—Plaintiff's full academic standing, Graduate Research Assistantship, and SEVIS-based lawful status—pending this Court's determination of Plaintiff's Renewed Motion for Preliminary Injunction.

This renewed motion cures the deficiencies noted in the Court's prior order by:

- Submitting a Verified Declaration pursuant to *28 U.S.C. § 1746* with *Exhibits A–W*;

- Providing *Rule 65(b)(1)(B)* certification and *Rule 65(a)* notice with **Exhibit X** as proof of mailing; and

- Presenting updated sworn evidence showing Plaintiff's financial stability and SEVIS-based immigration status are in imminent jeopardy.

Defendants have now been served with the summons and complaint (returns executed September 10, 2025), and Plaintiff serves this renewed TRO motion, separately filed supporting Memorandum of Law (*L.U. Civ. R. 7(b)(4)*), and evidentiary Exhibits under *Rule 5*. Plaintiff proceeds on notice pursuant to *Fed. R. Civ. P. 65(a)* and *Rule 5*, and relies on the separately filed Certification under *Fed. R. Civ. P. 65(b)(1)(B)* only in the alternative, should the Court determine that immediate ex parte relief is necessary.

## IMMEDIATE AND IRREPARABLE INJURY

1. Specific facts set forth in the Verified Declaration and attached Exhibits clearly show that Plaintiff faces immediate and irreparable injury, loss, and damage that will occur unless

temporary restraining relief is granted to preserve the *status quo ante* until the preliminary injunction motion is determined.

2. As set forth in the Verified Declaration and attached Exhibits, Defendant Dr. Yi Yang, informed Plaintiff by email on August 22, 2025 (**Exhibit L**), that he was "ineligible" for Graduate Assistantship immediately following his downgrade to "provisional status" on August 21–22, 2025 (**Exhibits J–M**).

3. Termination of Plaintiff's assistantship eliminated the funding source listed on his SEVIS Form I-20. Under *8 C.F.R. § 214.2(f)*, maintaining adequate funding and Full-time enrollment is a mandatory condition of lawful F-1 status. This disruption places Plaintiff at imminent risk of being declared out of status and having his SEVIS record terminated unless his standing and funding are promptly restored.

4. As a direct result of Plaintiff's downgrade to "provisional status" and the resulting loss of tuition remission, the Office of the University Bursar issued a Balance Notice for $16,300.69 on September 15, 2025 (**Exhibit V**). If not immediately addressed, this balance will automatically trigger enrollment holds before the next registration period, blocking Plaintiff's ability to register for courses, access transcripts, and perform other essential academic functions. These holds could lead to administrative withdrawal and termination of Plaintiff's SEVIS record, causing irreparable harm to his education and lawful F-1 immigration status unless the *status quo ante* is restored prior to determination of the preliminary injunction motion.

5. Also as a direct result of Plaintiff's downgrade to "provisional status" and the resulting loss of stipend, Plaintiff is now more than one month in arrears on rent and faces imminent eviction proceedings. Plaintiff is also unable to meet basic living expenses, including food and

3

groceries. These conditions pose an immediate threat to Plaintiff's housing security, physical health, and ability to engage in coursework and research, and they will cause irreparable harm unless the *status quo ante* is restored prior to determination of the preliminary injunction motion.

6. The "provisional status" designation places a lasting negative notation on Plaintiff's academic record, inflicts reputational damage that threatens to impair current and future academic and professional opportunities, and causes escalating psychological distress with each passing day. These harms are ongoing and will continue to compound unless the designation is enjoined and Plaintiff's full standing is restored prior to determination of the preliminary injunction motion.

7. If Plaintiff is forced to leave the United States as a result of losing enrollment and SEVIS status, he will lose standing to pursue this case, be unable to participate in discovery or other proceedings, and face a substantial risk of his claims being declared moot—effectively foreclosing any opportunity for judicial review. This harm is imminent and could occur before Plaintiff's preliminary injunction motion is determined, irreparably depriving him of meaningful access to the courts if not prevented by temporary relief.

## LEGAL STANDARD

Plaintiff incorporates by reference the separately filed Memorandum of Law, which sets forth the governing legal standard under ***Fed. R. Civ. P. 65(b)*** and applies the ***Winter*** factors. As explained therein, Plaintiff has made a clear showing that: (1) he is substantially likely to succeed on the merits, (2) he faces immediate and irreparable harm absent relief, (3) the balance of equities tips sharply in his favor, and (4) a TRO would serve—rather than disserve—the public interest.

## REQUESTED RELIEF

Pending this Court's determination of Plaintiff's Renewed Motion for Preliminary Injunction, Plaintiff respectfully requests that this Court, pursuant to **Fed. R. Civ. P. 65(b)**, enter a narrowly tailored Temporary Restraining Order:

1. Directing Defendants to maintain Plaintiff's full-time enrollment, good academic standing, and SEVIS eligibility in order to prevent immediate academic derailment, loss of immigration status, and potential mootness of this case before the preliminary injunction is determined.

2. Directing Defendants to restore and maintain Plaintiff's Graduate Research Assistantship—including stipend, tuition remission, and health insurance—to the status that existed immediately prior to the August 2025 downgrade, pending this Court's determination of Plaintiff's Renewed Motion for Preliminary Injunction. Defendant Dr. Yi Yang expressly stated that Plaintiff became "ineligible" for the assistantship solely because of the downgrade to "provisional status." Accordingly, preserving Plaintiff's Full academic standing under Paragraph 1 eliminates the only stated basis for termination and therefore requires reinstatement of the assistantship to fully restore the *status quo ante*.

3. Enjoining Defendants, pending this Court's determination of Plaintiff's Renewed Motion for Preliminary Injunction, from enforcing the August 2025 downgrade to "provisional status," imposing bursar holds, transcript blocks, or registration restrictions tied to that downgrade, or taking any additional retaliatory or adverse action that would alter Plaintiff's academic or immigration status before the preliminary injunction is determined.

4. Waiving the security requirement pursuant to **Fed. R. Civ. P. 65(c)**, or, alternatively, setting it at a nominal $1.00, in light of Plaintiff's indigency, the urgent nature of the relief sought, the public interest in protecting constitutional and statutory rights, and the equitable purpose of this Temporary Restraining Order.

**CERTIFICATE OF SERVICE**

Pursuant to ***Fed. R. Civ. P. 5(b)(2)(C), Fed. R. Civ. P. 65(b)(1)(B),*** and ***28 U.S.C. § 1746***, I certify under penalty of perjury that on September 18, 2025, I served a true and correct copy of:

- Urgent and Necessitous Renewed Motion for Temporary Restraining Order (TRO)

- Urgent and Necessitous Renewed Motion for Preliminary Injunction

- Memorandum of Law in Support of Preliminary Injunction

- Declaration of Ehiremen Bennard Eriakha in Support of TRO and Preliminary Injunction

- Notice of Service under ***Rule 5*** and, in the alternative, Certification under Rule ***65(b)(1)(B)***

- Motion for Leave to Exceed Page Limit

- Motion to Waive Security Requirement

- Motion and Notice to Correct the Record

- Declaration in Support of Motion and Notice to Correct the Record

- Verified Pleading Declaration (Verification of Complaint)

- Exhibits A–T, V, W

On the following recipients by **U.S. Mail, first-class, postage prepaid** (service complete upon mailing under ***Rule 5(b)(2)(C)***):

**The University of Mississippi and all Official-Capacity Defendants:**

- **Office of General Counsel**

    University of Mississippi,

    209 Lyceum,

    University, MS 38677

**Individual-Capacity Defendants (Campus Office Address):**

- **Dr. Yi Yang**

  Chair, Department of Pharmacy Administration

  University of Mississippi, School of Pharmacy

  232 Faser Hall,

  University, MS 38677

  yiyang@olemiss.edu

- **Dr. Marie Barnard**

  Graduate Program Coordinator, Department of Pharmacy Administration

  University of Mississippi, School of Pharmacy

  234 Faser Hall,

  University, MS 38677

  mbarnard@olemiss.edu

- **Dr. Annette Kluck**

  Dean of the Graduate School

  University of Mississippi, Graduate School

  University, MS 38677

  askluck@olemiss.edu

- **Dr. Yinan Huang**

  Faculty Member, Department of Pharmacy Administration

  University of Mississippi, School of Pharmacy

  235 Faser Hall,

  University, MS 38677

yhuang9@olemiss.edu

**Clerk of Court (for filing in the record):**

- **Clerk of Court**

U.S. District Court, Northern District of Mississippi – Oxford Division

Federal Building, 911 Jackson Avenue East

Oxford, MS 38655

(Clerk's copy includes **Exhibit U** [previously signed and stamped memorandum] and **Exhibit X** [proof of mailing]).

Courtesy copies were also transmitted by email to the above recipients on September 18, 2025.

Executed this 18th day of September, 2025, in Oxford, Mississippi.

_____

Ehiremen Bennard Eriakha

Plaintiff, Pro Se

1802 Jackson Ave. W., Apt. 83

Oxford, MS 38655

Tel: (662) 281-4676

Email: eriakhabernard@gmail.com

# APPENDIX C

## UNITED STATES DISTRICT COURT

for the

Northern District of Mississippi

Oxford Division

| | | |
|---|---|---|
| Ehiremen Bennard Eriakha | ) | Case No.    3:25-cv-00250 |
| *Plaintiff(s)* | ) | |
| **-v-** | ) | |
| | ) | |
| University of Mississippi; Dr. Yi Yang; Dr. | ) | |
| Marie Barnard; Dr. Annette Kluck; Dr. Yinan | ) | |
| Huang | ) | |
| *Defendant(s)* | ) | |

**URGENT AND NECESSITOUS RENEWED MOTION FOR**

**PRELIMINARY INJUNCTION**

## INTRODUCTION AND RELIEF REQUESTED

COMES NOW Plaintiff Ehiremen Bennard Eriakha, appearing pro se and in forma pauperis, and respectfully moves this Court pursuant to **Fed. R. Civ. P. 65(a)** and **L.U. Civ. R. 7** for entry of a Preliminary Injunction preserving the *status quo ante*—Plaintiff's full academic standing, Graduate Research Assistantship, and SEVIS-based lawful status—pending final adjudication of this case, as Plaintiff satisfies the requirements for preliminary injunctive relief under **Rule 65**.

This renewed motion cures the deficiencies noted in the Court's prior order by:

- Submitting a Verified Declaration pursuant to **28 U.S.C. § 1746** with **Exhibits A–W** attached;

- Providing **Rule 65(b)(1)(B)** certification and **Rule 65(a)** notice with **Exhibit X** as proof of mailing; and

- Presenting updated sworn evidence showing Plaintiff's financial stability and SEVIS-based immigration status are in imminent jeopardy.

Defendants have now been served with the summons and complaint (returns executed September 10, 2025), and Plaintiff serves this renewed Motion for Preliminary Injunction, separately filed supporting Memorandum of Law (**L.U. Civ. R. 7(b)(4)**), and evidentiary Exhibits under **Rule 5**. Plaintiff proceeds on notice pursuant to **Fed. R. Civ. P. 65(a)** and **Rule 5**.

## IMMEDIATE AND IRREPARABLE INJURY

1. The record demonstrates that Plaintiff is likely to suffer imminent and continuing harm that cannot be remedied by monetary damages, including loss of educational and immigration status, housing instability, reputational injury, and impairment of his ability to pursue this litigation, all of which will persist absent entry of preliminary injunctive relief.

2.  As set forth in the Verified Declaration and attached Exhibits, Defendant Dr. Yi Yang, Chair of the Department of Pharmacy Administration, informed Plaintiff by email on August 22, 2025 (**Exhibit L**), that he was "ineligible" for Graduate Assistantship immediately following his downgrade to "provisional status" on August 21–22, 2025 (**Exhibits J–M**).

3.  Termination of Plaintiff's assistantship eliminated the funding source listed on his SEVIS Form I-20. Under ***8 C.F.R. § 214.2(f)***, maintaining adequate funding and Full-time enrollment is a mandatory condition of lawful F-1 status. This disruption places Plaintiff at imminent risk of being declared out of status and having his SEVIS record terminated unless his standing and funding are promptly restored.

4.  As a direct result of Plaintiff's downgrade to "provisional status" and the resulting loss of tuition remission, the Office of the University Bursar issued a Balance Notice for $16,300.69 on September 15, 2025 (**Exhibit V**). If left unresolved, this balance will trigger automatic enrollment holds that will block Plaintiff from registering for courses, obtaining transcripts, and completing other critical academic requirements. These holds will ultimately lead to administrative withdrawal, jeopardizing Plaintiff's ability to remain enrolled and maintain lawful F-1 status. The resulting disruption to Plaintiff's education and immigration eligibility constitutes continuing and irreparable harm that will persist throughout this litigation absent injunctive relief.

5.  Also as a direct result of Plaintiff's downgrade to "provisional status" and the resulting loss of stipend, Plaintiff is now more than one month in arrears on rent, faces the threat of eviction, and is unable to meet basic living expenses, including food and groceries. These conditions jeopardize Plaintiff's housing stability, physical health, and ability to participate fully in

3

coursework and research. Without preliminary injunctive relief, these harms will continue to compound throughout this litigation and cannot be remedied by monetary damages.

6. The "provisional status" designation places a lasting negative notation on Plaintiff's academic record, inflicts reputational damage that threatens to impair current and future academic and professional opportunities, and causes continuing psychological distress with each passing day. These harms are ongoing and will persist throughout the course of this litigation unless Plaintiff's full standing is restored, and they cannot be remedied by monetary damages.

7. If Plaintiff is forced to leave the United States due to loss of enrollment and SEVIS status, he will lose standing to pursue this case, be unable to participate in discovery or hearings, and face a significant likelihood of his claims being declared moot—effectively depriving him of judicial review. These risks are ongoing and are likely to materialize during the pendency of this litigation absent preliminary injunctive relief.

## LEGAL STANDARD

Plaintiff incorporates by reference the separately filed Memorandum of Law, which sets forth the governing legal standard under *Fed. R. Civ. P. 65(a)* and applies the *Winter* factors. As explained therein, Plaintiff has made a clear showing that: (1) he is substantially likely to succeed on the merits, (2) he is likely to suffer irreparable harm absent relief, (3) the balance of equities tips sharply in his favor, and (4) an injunction would serve—rather than disserve—the public interest.

## REQUESTED RELIEF

Pending final adjudication of this case, Plaintiff respectfully requests that this Court, pursuant to *Fed. R. Civ. P. 65(a)*, enter a narrowly tailored Preliminary Injunction:

1. Directing Defendants to maintain Plaintiff's full-time enrollment, good academic standing, and SEVIS eligibility in order to prevent continuing academic derailment, loss of immigration status, and potential mootness of this case during the pendency of this litigation.

2. Directing Defendants to restore and maintain Plaintiff's Graduate Research Assistantship—including stipend, tuition remission, and health insurance—to the status that existed immediately prior to the August 2025 downgrade, pending final adjudication of this case. Defendant Dr. Yi Yang expressly stated that Plaintiff became "ineligible" for the assistantship solely because of the downgrade to "provisional status." Accordingly, preserving Plaintiff's Full academic standing under Paragraph 1 eliminates the only stated basis for termination and therefore requires continued reinstatement of the assistantship to maintain the *status quo ante* throughout the litigation.

3. Enjoining Defendants, pending final adjudication of this case, from enforcing the August 2025 downgrade to "provisional status," imposing bursar holds, transcript blocks, or registration restrictions tied to that downgrade, or taking any additional retaliatory or adverse action that would alter Plaintiff's academic or immigration status during the pendency of this litigation.

4. Waiving the security requirement pursuant to ***Fed. R. Civ. P. 65(c)***, or, alternatively, setting it at a nominal $1.00, in light of Plaintiff's indigency, the public interest in protecting constitutional and statutory rights, and the equitable purpose of preliminary injunctive relief.

## CERTIFICATE OF SERVICE

Pursuant to **Fed. R. Civ. P. 5(b)(2)(C), Fed. R. Civ. P. 65(b)(1)(B),** and **28 U.S.C. § 1746**, I certify under penalty of perjury that on September 18, 2025, I served a true and correct copy of:

- Urgent and Necessitous Renewed Motion for Temporary Restraining Order (TRO)

- Urgent and Necessitous Renewed Motion for Preliminary Injunction

- Memorandum of Law in Support of Preliminary Injunction

- Declaration of Ehiremen Bennard Eriakha in Support of TRO and Preliminary Injunction

- Notice of Service under **Rule 5** and, in the alternative, Certification under Rule **65(b)(1)(B)**

- Motion for Leave to Exceed Page Limit

- Motion to Waive Security Requirement

- Motion and Notice to Correct the Record

- Declaration in Support of Motion and Notice to Correct the Record

- Verified Pleading Declaration (Verification of Complaint)

- Exhibits A–T, V, W

On the following recipients by **U.S. Mail, first-class, postage prepaid** (service complete upon mailing under **Rule 5(b)(2)(C)**):

**The University of Mississippi and all Official-Capacity Defendants:**

- **Office of General Counsel**

  University of Mississippi,

  209 Lyceum,

  University, MS 38677

**Individual-Capacity Defendants (Campus Office Address):**

- **Dr. Yi Yang**

  Chair, Department of Pharmacy Administration

  University of Mississippi, School of Pharmacy

  232 Faser Hall,

  University, MS 38677

  yiyang@olemiss.edu

- **Dr. Marie Barnard**

  Graduate Program Coordinator, Department of Pharmacy Administration

  University of Mississippi, School of Pharmacy

  234 Faser Hall,

  University, MS 38677

  mbarnard@olemiss.edu

- **Dr. Annette Kluck**

  Dean of the Graduate School

  University of Mississippi, Graduate School

  University, MS 38677

  askluck@olemiss.edu

- **Dr. Yinan Huang**

  Faculty Member, Department of Pharmacy Administration

  University of Mississippi, School of Pharmacy

  235 Faser Hall,

  University, MS 38677

yhuang9@olemiss.edu

**Clerk of Court (for filing in the record):**

- **Clerk of Court**

U.S. District Court, Northern District of Mississippi – Oxford Division

Federal Building, 911 Jackson Avenue East

Oxford, MS 38655

(Clerk's copy includes **Exhibit U** [previously signed and stamped memorandum] and **Exhibit X** [proof of mailing]).

Courtesy copies were also transmitted by email to the above recipients on September 18, 2025.

Executed this 18th day of September, 2025, in Oxford, Mississippi.

_____

Ehiremen Bennard Eriakha

Plaintiff, Pro Se

1802 Jackson Ave. W., Apt. 83

Oxford, MS 38655

Tel: (662) 281-4676

Email: eriakhabernard@gmail.com

# APPENDIX D

## UNITED STATES DISTRICT COURT

for the

Northern District of Mississippi

Oxford Division

| | | | |
|---|---|---|---|
| Ehiremen Bennard Eriakha | ) | Case No. | 3:25-cv-00250 |
| *Plaintiff(s)* | ) | | |
| **-v-** | ) | | |
| | ) | | |
| University of Mississippi; Dr. Yi Yang; Dr. | ) | | |
| Marie Barnard; Dr. Annette Kluck; Dr. Yinan | ) | | |
| Huang | ) | | |
| *Defendant(s)* | ) | | |

**MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY**

**INJUNCTION MOTION**

1

# Table of Contents

MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION MOTION ...................... 1

STATEMENT OF FACTS ......................................................................................... 4

    Plaintiff's Academic Record: No Legitimate Basis for Sanction ................................ 4

    Binding Mentor–Mentee Agreement Guaranteeing One-on-One Mentorship .......................... 5

    Coercive Restructuring and Surveillance in Violation of Mentoring Agreement ...................... 5

    Complaint Regarding Increased Surveillance, Coercion, Psychological Safety, and Breach of Signed Mentor-Mentee Agreement ........................................................................ 6

    Inconsistent Justifications and Shifting Rationales ..................................................... 7

    Misuse and Repurposing of Developmental Tool ....................................................... 8

    Rebuttal Letter and Institutional Stonewalling .......................................................... 9

    Downgrade to Provisional Status and Graduate Research Assistantship Termination .............. 9

    Consequences of Defendants' Actions .................................................................... 10

ARGUMENT ........................................................................................................ 12

I.    Plaintiff Has a Substantial Likelihood of Success on the Merits ........................................ 12

    A.   First Amendment Retaliation (Speech, Petition, and Association) ................................. 12

    B.   Equal Protection (Fourteenth Amendment / § 1983) ....................................................... 22

    C.   Violation of Due Process (Fourteenth Amendment / § 1983) ............................................ 26

    D.   Mississippi Law: Breach of Contract, Implied Covenant, and Fiduciary Duty ................ 31

E.    Cumulative Likelihood of Success ...................................................... 33

II.    Plaintiff Will Suffer Irreparable Injury Without the Injunction ............................................. 35

III.    The Balance of Equities Strongly Favors Plaintiff ........................................... 43

IV.    The Public Interest Compels Granting the Injunction ...................................... 46

V.    Anticipated Defenses Fail ......................................................................... 49

PRAYER FOR RELIEF ............................................................................... 54

CONCLUSION ............................................................................................. 55

# STATEMENT OF FACTS

**Plaintiff's Academic Record: No Legitimate Basis for Sanction**

Ehiremen (Bennard) Eriakha is a Ph.D. student in the Department of Pharmacy Administration at the University of Mississippi. Since beginning his program in August 2023, he has remained in continuous good standing, earning straight A+ grades across four consecutive semesters and maintaining a perfect 4.0 GPA. He has never failed a course, withdrawn, or been cited for any academic deficiency.

His record reflects consistent academic and professional distinction:

- In 2024, he presented research at the International Society for Pharmacoeconomics and Outcomes Research (ISPOR) national conference, where his abstract ranked in the top 5% of submissions.

- In 2024, he was inducted into Phi Kappa Phi, the nation's oldest and most selective all-discipline honor society, generally limited to the top 10% of graduate students.

- In 2024, he was named Teaching Assistant of the Year by the School of Pharmacy.

- In 2025, he was inducted into the Gamma Beta Phi National Honor Society and later into the Rho Chi Society, both of which recognize distinguished academic and professional achievement in pharmacy.

Taken together, this record establishes no legitimate academic basis for Defendants' sanctions. Plaintiff's performance is one of sustained excellence, not deficiency.

**Binding Mentor–Mentee Agreement Guaranteeing One-on-One Mentorship**

On July 19, 2024, Plaintiff executed a signed Mentor–Mentee Agreement with Defendant, faculty member Dr. Yinan Huang (Exhibit A). The Agreement, expressly approved by the Department, created a one-on-one developmental mentoring relationship intended to ensure stability, academic guidance, and professional growth. It was a core component of Plaintiff's doctoral program and an academic framework on which he reasonably relied in structuring his research, coursework, and long-term trajectory.

By documenting mentoring expectations in a signed, department-approved Agreement, the University created binding program obligations, limiting arbitrary alteration and foreclosing any claim that later departures were protected exercises of unfettered academic discretion. For nearly a year, Plaintiff and Dr. Yinan Huang maintained a stable, productive relationship marked by consistent feedback, collaborative research, and academic guidance. This trust and stability were essential to Plaintiff's progress and professional development.

**Coercive Restructuring and Surveillance in Violation of Mentoring Agreement**

On June 13, 2025, Department Chair Dr. Yi Yang unilaterally dismantled Plaintiff's mentoring arrangement with Dr. Yinan Huang. Without consent, notice, or reference to any written policy, Dr. Yi Yang imposed an involuntary "co-mentorship," directly violating the signed Mentor–Mentee Agreement. The Fall 2025 Mentor Assignment List demonstrates that, unlike all other students who retained a single mentor, Plaintiff alone was involuntarily subjected to dual mentorship despite multiple documented objections (Exhibit O).

Beyond unilaterally altering the mentoring structure, Dr. Yi Yang began attending Plaintiff's weekly research meetings with Dr. Yinan Huang. These sessions had been forums for feedback,

collaboration, and professional development. Dr. Yi Yang's unexplained presence fundamentally altered the nature of these weekly research meetings, transforming them from academic discussions into exercises in surveillance and coercion.

This selective and abrupt departure from established practice and written commitments:

- Breached the stability and expectations guaranteed by the signed Mentor-Mentee Agreement;

- Undermined Plaintiff's mentoring relationship by replacing collaboration with coercive imposition; and

- Introduced intrusive monitoring into research meetings under the guise of "co-mentorship," without any legitimate academic justification.

**Complaint Regarding Increased Surveillance, Coercion, Psychological Safety, and Breach of Signed Mentor-Mentee Agreement**

Between June 13 and June 24, 2025, Plaintiff submitted written objections to the dismantling of his one-on-one mentoring agreement and the imposition of coerced co-mentorship. These objections were directed to Dr. Yinan Huang (developmental mentor), Dr. Yi Yang (Department Chair), Dr. Marie Barnard (Graduate Program Coordinator), and Dr. Annette Kluck (Dean of Graduate School).

Plaintiff explained that the restructuring:

- Violated the plain text of the signed Mentor–Mentee Agreement, which expressly guaranteed **one-on-one** mentoring on a regular basis (Exhibit A: "*the developmental mentor will be committed to meeting **one-on-one** with the student on a regular basis*");

- Had no basis in any written policy; and

- Compromised the psychological safety essential to an effective mentoring relationship.

He specifically requested that the Department honor the signed Mentor-Mentee Agreement and adopt transparent, non-coercive, and psychologically safe mentoring practices. These objections placed Defendants on clear notice that Plaintiff opposed mentoring practices that were coercive, unsupported by policy, and contrary to established professional norms.

**Inconsistent Justifications and Shifting Rationales**

Despite multiple written complaints, Defendants refused to address Plaintiff's objections and instead offered shifting and contradictory explanations to justify dismantling the signed one-on-one Mentor-Mentee Agreement.

- Dr. Yi Yang initially claimed the restructuring was for "*Dr. Huang's professional development*" and had been "*approved by all tenured faculty.*"

- In a July 17, 2025, virtual meeting, Dr. Yinan Huang admitted the changes were imposed to "*protect*" her as she prepared to leave the University and to "*keep the faculty happy*" in order to preserve access to research data.

- In the same meeting, Dr. Yinan Huang added, "*Dr. Yang was the one who recruited me. She sponsored you during the summer. She pays you.*" This remark was intended to pressure Plaintiff into compliance with actions unsupported by any policy, in direct violation of the signed Mentor-Mentee Agreement, inconsistent with accepted mentoring practices, and already identified by Plaintiff as detrimental to his mental health and psychological safety.

These shifting rationales confirm that the restructuring was not a bona fide academic judgment but a coercive, retaliatory measure. Contradictory justifications of this kind are recognized as classic evidence of pretext and unlawful motive.

**Misuse and Repurposing of Developmental Tool**

On June 30, 2025—only six days after Plaintiff objected to the dismantling of his signed Mentor-Mentee Agreement—Defendants Dr. Marie Barnard and Dr. Yi Yang issued a disciplinary memorandum falsely alleging that Plaintiff had "*failed to meet a non-coursework academic performance expectation*" by "*refusing*" to submit his Abilities Transcript ("AT") (Exhibit C). The disciplinary memorandum threatened to downgrade Plaintiff to provisional status on this basis. This marked the first formal sanction against Plaintiff and followed immediately from his protected objections.

The disciplinary memorandum was both factually inaccurate and procedurally defective:

- Plaintiff had repeatedly confirmed his willingness to complete the AT under safe and transparent mentoring conditions and had actively sought to finalize the process. Defendants disregarded these communications and rebranded Plaintiff's objections to coercive mentoring as "noncompliance."
- The AT is not a graded assignment, qualifying examination, or research deliverable. It is a developmental reflection tool intended to support self-assessment, guide professional growth, and facilitate consultation with the mentor. University documents explicitly describe the AT in these terms (Exhibits P, Q).

By mischaracterizing the AT as an 'academic performance expectation,' Defendants distorted program policy and converted a formative, self-reflective, non-punitive tool into an illegitimate basis for severe sanction.

8

**Rebuttal Letter and Institutional Stonewalling**

On July 9, 2025, Plaintiff submitted a detailed rebuttal letter (Exhibit D) contesting the June 30 memorandum as factually inaccurate, procedurally defective, and retaliatory. The rebuttal identified multiple defects: (1) the memorandum's incomplete and misleading narrative; (2) unresolved barriers to Abilities Transcript (AT) completion created by departmental decisions; (3) unilateral restructuring of the signed one-on-one Mentor-Mentee Agreement; (4) coercive imposition of an in-person meeting format; and (5) the improper repurposing of the AT as a disciplinary tool.

The letter was addressed to Dr. Marie Barnard, Graduate Program Coordinator, and copied to Dr. Yinan Huang (Developmental Mentor), Dr. Yi Yang (Department Chair), Dr. Annette Kluck (Dean of Graduate School), Dr. Jennifer Simons (Assistant Provost), Dr. Noel Wilkin (Provost), and the Office of the Provost. It proposed concrete remedies, including withdrawal of the June 30 memorandum, restoration of the one-on-one Mentor-Mentee Agreement, written assurances of non-retaliation, and disclosure of policies authorizing the challenged actions.

Despite this comprehensive and formally documented submission, Defendants gave no acknowledgement or response to the rebuttal letter. Plaintiff thus raised his concerns in good faith through every available institutional channel, thereby exhausting internal remedies.

**Downgrade to Provisional Status and Graduate Research Assistantship Termination**

On August 21, 2025, without addressing Plaintiff's July 9 rebuttal letter, Graduate Program Coordinator Dr. Marie Barnard issued a disciplinary memorandum recommending that Plaintiff be reduced to provisional status. This was the second formal sanction, escalating the measures already

imposed. The disciplinary memorandum introduced new conditions for regaining full standing that had not previously been identified as deficiencies.

On August 22, 2025, Dean Annette Kluck ratified the downgrade of Plaintiff to provisional status (Exhibit M). The letter from Dean Annette Kluck cited Graduate School policy but omitted safeguards expressly required by the University of Mississippi's M Book (Exhibit R):

1. **Faculty Group Recommendation** – The M Book requires that changes in student status be recommended by an appropriate faculty group, such as an advisory committee or graduate education committee. Neither Dr. Marie Barnard's August 21 memorandum nor Dean Annette Kluck's letter identifies any faculty group recommendation in support of the downgrade.

2. **Documented Academic Deficiency** – The policy allows sanctions only for documented academic deficiencies. No such deficiencies were cited. Instead, the Abilities Transcript, a developmental tool, was referenced.

3. **Timing** – The policy provides that dismissals or status changes "ordinarily … take effect between semesters or enrollment periods." Plaintiff's downgrade was imposed immediately at the start of the Fall 2025 semester.

Later on August 22, Chair Dr. Yi Yang responded to Plaintiff's August 19 inquiry regarding his missing Graduate Research Assistantship renewal letter. Dr. Yi Yang stated that Plaintiff had become "not eligible" for an assistantship because of the provisional status imposed earlier that day.

**Consequences of Defendants' Actions**

Between June and August 2025, Plaintiff experienced immediate and severe harm as a direct result of Defendants' actions:

1. **Loss of Graduate Research Assistantship** – the termination of stipend, tuition remission, and essential financial support has deprived Plaintiff of the means to continue his studies.

2. **Jeopardized F-1 Visa Eligibility** – lawful status requires continuous full-time enrollment and financial stability, both of which have been placed at risk.

3. **Disruption of Doctoral Progress** – the sanctions have resulted in what is effectively constructive expulsion from the program.

4. **Damage to Reputation and Career Prospects** – the notation of provisional status on Plaintiff's academic record has created a lasting stigma.

5. **Psychological and Emotional Distress** – instability and coercive treatment have caused significant personal harm.

6. **Risk of Losing Access to Federal Court** – the potential loss of lawful status has threatened and continues to threaten Plaintiff's ability to litigate constitutional claims.

These harms remain immediate, concrete, and irreparable. They continue to endanger Plaintiff's academic trajectory, livelihood, immigration status, and access to justice.

# ARGUMENT

Preliminary injunctive relief is warranted where the movant demonstrates: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm absent relief, (3) that the balance of equities favors the movant, and (4) that the injunction serves the public interest. *Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)*; *Canal Auth. of Fla. v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974)*.

The Supreme Court has clarified that irreparable harm must be "likely," not merely possible. *Winter, 555 U.S. at 22*. The Fifth Circuit applies these factors flexibly and holistically, rather than in a rigid or mechanical fashion. *Canal Auth., 489 F.2d at 572*. A particularly strong showing on the likelihood of success and irreparable harm may be decisive. *Janvey v. Alguire, 647 F.3d 585, 595–96 (5th Cir. 2011)*.

## I.      Plaintiff Has a Substantial Likelihood of Success on the Merits

### A.  First Amendment Retaliation (Speech, Petition, and Association)

Under *42 U.S.C. § 1983*, a public university may not retaliate against a student for exercising rights protected by the First Amendment. To prevail on such a claim in the Fifth Circuit, a plaintiff must show: (1) engagement in protected activity, (2) a materially adverse action, and (3) a causal connection between the two. *Keenan v. Tejeda, 290 F.3d 252, 258–59 (5th Cir. 2002)*. An action is materially adverse if it "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Id. at 259*; *see also Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)*.

### 1.  Protected Activity

Plaintiff engaged in multiple acts of protected speech, petitioning, and association, including:

a.  Submitting written objections (June 13–24, 2025) contesting the dismantling of his signed one-on-one Mentor-Mentee Agreement;

b.  Raising concerns regarding coercion, psychological safety, retaliation, and procedural fairness; and

c.  Filing a formal rebuttal on July 9, 2025 (Exhibit D) to the June 30 memorandum, contesting its factual inaccuracies, procedural defects, and retaliatory purpose, and requesting redress.

These communications are protected expression and petitioning within a public university. See *Healy v. James, 408 U.S. 169, 180 (1972)* (student speech on campus entitled to full First Amendment protection); *Garcetti v. Ceballos, 547 U.S. 410, 420–21 (2006)* (petitioning government officials for redress is a core protected activity).

Additionally, Plaintiff exercised protected associational rights by visibly supporting his twin brother, Omokhodion Alfred Eriakha, whose own protected activities—including complaints of retaliation, breach of contract, due process violations, and denial of disability accommodations—were known to the Department and University. Retaliation for this association strikes at the heart of the First Amendment. *See Colson v. Grohman, 174 F.3d 498, 508 (5th Cir. 1999)* (retaliation-by-association claims recognized); *Roberts v. U.S. Jaycees, 468 U.S. 609, 617–18 (1984)* (freedom of association protects personal and family relationships).

Defendants were fully aware of Plaintiff's protected activities, as well as those of his brother, and acted with knowledge of these ongoing objections and complaints. The first element of the Fifth Circuit's retaliation test is therefore satisfied.

**2.  Materially Adverse Actions**

Shortly after Plaintiff and his brother engaged in these protected activities, Defendants imposed escalating sanctions that would plainly deter a person of "ordinary firmness" from continuing to exercise protected rights. ***Keenan v. Tejeda, 290 F.3d 252, 258–59 (5th Cir. 2002)***.

- **June 13, 2025** – Chair Dr. Yi Yang dismantled Plaintiff's signed one-on-one Mentor–Mentee Agreement by inserting herself as a "co-mentor," despite the Agreement's guarantee of regular one-on-one mentoring (Exhibit A). Dr. Yi Yang then began attending Plaintiff's weekly research meetings, converting mentoring sessions into monitored environments. The U.S. Department of Education identifies surveillance and heightened scrutiny as classic indicators of retaliation. These interventions chilled academic discourse and replaced collaboration with intimidation.

- **June 30, 2025** – Within days of Plaintiff's objections and his twin brother Alfred's protected activities, Defendants issued a disciplinary memorandum recharacterizing the Abilities Transcript—a tool expressly designed to be developmental and non-evaluative—into a punitive instrument, while further threatening Plaintiff with reclassification to "provisional" status for alleged "non-submission" (Exhibit C).

- **August 21–22, 2025** – On August 21, Dr. Marie Barnard recommended, and on August 22 Dean Annette Kluck ratified, Plaintiff's downgrade to provisional status (Exhibits J, M). A few hours later that same day, Dr. Yi Yang invoked that downgrade to declare Plaintiff ineligible for his Graduate Research Assistantship (Exhibit L).

Because Plaintiff's F-1 visa requires continuous full-time enrollment and financial stability, Defendants' severe and conscience-shocking actions have jeopardized his lawful immigration status and ability to remain in the United States. The consequences have been immediate and ongoing: loss of livelihood, disruption of doctoral progress, reputational stigma, constructive

14

expulsion from the program, psychological distress, and risk of deportation. Arbitrary sanctions of this magnitude would unquestionably deter a student of ordinary firmness from exercising First Amendment rights. ***Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)***.

**3.  Causal Connection**

The detailed chronology set forth below provides compelling evidence of causation between Plaintiff's protected activities and Defendants' escalating sanctions.

**a.  2025 – Background**

Defendants knew that Plaintiff and his twin brother, Omokhodion (Alfred) Eriakha, depended on their graduate assistantship for financial survival. They were fully aware of Alfred's formal complaints alleging retaliation, breach of contract, due process violations, and denial of accommodations. On June 3, 2025, Alfred filed his most recent complaint, specifically identifying procedural and policy violations. Rather than address those concerns, the Department and University evaded accountability, quietly amending their Policies and Procedures Guide later that month to remove the very safeguard Alfred had identified as violated (see Exhibit T), and soon thereafter imposing sanctions against him.

**b.  June 13, 2025 – Increased surveillance, monitoring, and coercion**

Around this period, Plaintiff began experiencing heightened surveillance, intimidation, and coercive pressure. On June 13, 2025, Department Chair Dr. Yi Yang unilaterally dismantled Plaintiff's signed one-on-one Mentor-Mentee Agreement with Dr. Yinan Huang, inserting herself as a "co-mentor" without consent, notice, or any policy basis. Dr. Yi Yang then began attending Plaintiff's weekly research meetings, transforming previously collaborative sessions into monitored environments. This forced oversight was inherently intimidating and constitutes a

materially adverse action, as it would deter a reasonable student from speaking openly. ***Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)***.

Defendants' explanations shifted over time. Dr. Yi Yang initially asserted the restructuring was for "*Dr. Huang's professional development*" and had been approved by tenured faculty. Dr. Huang later acknowledged it was imposed to "*protect*" her because she intended to leave the University and to "*keep the faculty happy*" to preserve access to research data. Such inconsistent and self-serving justifications are classic hallmarks of pretext. ***Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000)***.

Comparator evidence confirms selective targeting. Exhibit O shows that every other student retained a single mentor, while Plaintiff alone was assigned dual mentorship. Such disparate treatment is compelling proof of retaliatory intent. ***Keenan v. Tejeda, 290 F.3d 252, 259 (2002)***.

### c.   June 13–24, 2025 – Protected Activities

Between June 13 and June 24, Plaintiff submitted multiple written objections to the dismantling of his one-on-one Mentor-Mentee Agreement, and the imposition of coerced co-mentorship. These objections were directed to Dr. Yinan Huang (Developmental Mentor), Dr. Yi Yang (Department Chair), Dr. Marie Barnard (Graduate Program Coordinator), and Dr. Annette Kluck (Dean of Graduate School).

In these submissions, Plaintiff explained that the restructuring violated the signed Mentor–Mentee Agreement, had no policy basis, and undermined the psychological safety essential to an effective mentoring relationship. He specifically requested that the Department honor the signed Mentor-Mentee Agreement and implement transparent, non-coercive mentoring practices.

These objections were core speech and petitioning activity under the First Amendment. They placed Defendants on clear notice that Plaintiff opposed coercive mentoring practices and departures from established professional norms.

### d.  June 30, 2025 – Disciplinary Memorandum

On June 30, 2025—just six days after Plaintiff's written objections—Defendants Dr. Marie Barnard and Dr. Yi Yang issued a memorandum alleging Plaintiff had "*failed to meet a non-coursework academic performance expectation*" by "*failing*" to submit his Abilities Transcript ("AT") and threatened reclassification to provisional status (Exhibit C).

The close temporal proximity to Plaintiff's objections, coupled with Defendants' mischaracterization of the Abilities Transcript—a developmental, non-punitive tool—as evidence of fabricated academic deficiency, underscores the retaliatory nature of their actions. Such deliberate distortion of an academic instrument constitutes a substantial departure from accepted academic norms and eliminates any presumption of judicial deference. ***Bd. of Curators v. Horowitz, 435 U.S. 78, 91 (1978); Regents of the Univ. of Mich. v. Ewing, 474 U.S. 214, 225 (1985)***.

### e.  July 9, 2025 – Rebuttal Letter

On July 9, 2025, Plaintiff submitted a detailed rebuttal letter (Exhibit D) contesting the June 30 memorandum as factually inaccurate, procedurally defective, and retaliatory. The letter was directed to Graduate Program Coordinator Dr. Marie Barnard and copied to Dr. Yinan Huang (Developmental Mentor), Dr. Yi Yang (Department Chair), Dr. Annette Kluck (Dean of Graduate School), Dr. Jennifer Simons (Assistant Provost), Dr. Noel Wilkin (Provost), and the Office of the Provost.

This submission constituted core petitioning activity protected by the First Amendment. ***Garcetti v. Ceballos, 547 U.S. 410, 421 (2006)***. It invoked Plaintiff's due process rights by raising contractual, procedural, and constitutional objections, and by formally requesting redress. Defendants provided no acknowledgement or response to Plaintiff's detailed letter, thereby denying him a meaningful opportunity to be heard. ***Goss v. Lopez, 419 U.S. 565, 579 (1975)***.

By addressing every level of authority—mentor, Chair, Graduate Program Coordinator, Dean, Assistant Provost, and Provost—Plaintiff exhausted all internal remedies. The refusal to acknowledge or respond to Plaintiff's detailed letter, followed weeks later by reliance on a manufactured "provisional status" to terminate his assistantship, confirms that Defendants acted not on bona fide academic grounds but as part of a coordinated retaliatory scheme.

### f.  August 2025 – The Assistantship Non-Renewal and Retaliatory Scheme

By August 2025, Defendants had already targeted Plaintiff's twin brother, Omokhodion (Alfred) Eriakha—issuing a false "disruption" allegation, placing him on indefinite probation, terminating his assistantship, and downgrading him to provisional status. Even under these sanctions, Alfred continued exercising his constitutional rights. To escalate coercive pressure, Defendants then extended retaliation to Plaintiff, depriving both brothers of their sole financial support and source of livelihood. This constituted retaliation not only for Plaintiff's own protected activities but also for his close familial association with Alfred—conduct squarely prohibited by the First Amendment. ***Colson v. Grohman, 174 F.3d 498, 508 (5th Cir. 1999)***.

Because Plaintiff maintained a flawless academic and professional record, Defendants had no legitimate basis for terminating his assistantship or simultaneously depriving both brothers of funding. Instead, they manufactured a false "academic deficiency" through the contrived

imposition of provisional status, using it as a pretext to justify termination and to exert maximum coercive pressure.

The retaliatory scheme is evident from the sequence of events. In prior years, renewal letters for Fall assistantship appointments were consistently issued in June or July, creating a settled expectation of reappointment before teaching or proctoring duties commenced. In 2025, however, Defendants withheld Plaintiff's renewal letter while still assigning him assistantship duties. Only days into the semester, on August 21, they manufactured a downgrade to provisional status and then invoked that contrived status as a post hoc justification for Graduate Research Assistantship non-renewal.

The sequence unfolded as follows:

- **August 6, 2025** – Associate Dean Dr. Alicia Bouldin informed Plaintiff that Chair Dr. Yi Yang had listed him as a Teaching Assistant for the Fall 2025 semester.

- **August 8, 2025** – Dr. Bouldin formally assigned Plaintiff to PHCY 502 and PHCY 581 (Exhibit G), despite no renewal letter being issued—a departure from established practice, in which renewal letters were always issued in June or July before any assignments.

- **August 18, 2025** – PHCY 502 Team Leader Dr. James Pitcock onboarded Plaintiff by granting Blackboard access, assigning proctoring duties, and confirming his instructional role (Exhibits H, I).

- **August 19, 2025** – Plaintiff inquired with Dr. Yi Yang about the missing renewal letter. No response was provided.

- **August 21, 2025** – Graduate Program Coordinator Dr. Marie Barnard issued a memorandum recommending that Plaintiff be downgraded to provisional status.

- **August 22, 2025 (morning)** – Dean Annette Kluck ratified the recommendation, formally reducing Plaintiff to provisional status (Exhibit M).

- **August 22, 2025 (evening)** – Dr. Yi Yang belatedly responded to Plaintiff's August 19 inquiry, citing the newly imposed provisional status as the reason Plaintiff was "not eligible" for Graduate Research Assistantship renewal (Exhibit L).

The contradiction is unmistakable: Defendants withheld the routine renewal letter, assigned and onboarded Plaintiff into teaching roles, and then—only days into the semester—invoked a provisional downgrade as a justification for termination, doing so only after Plaintiff inquired about the missing renewal letter. This sequence constitutes precisely the type of "smoking gun" evidence of pretext recognized by the Supreme Court, thereby confirming that the asserted rationale was fabricated to conceal an unlawful retaliatory motive. *St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993)*.

Taken together—the dismantling of Plaintiff's signed Mentor-Mentee Agreement, coercive surveillance of research meetings, close temporal proximity of Defendant's retaliatory actions to Plaintiff's protected activities, shifting justifications, comparator evidence, and the Graduate Research Assistantship non-renewal scheme targeting both Plaintiff and his brother—establishes that Plaintiff's protected speech and association were motivating factors in Defendants' actions. Under *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283–84 (1977)*, the causation element is satisfied.

## 4.   Unconstitutional Conditions Doctrine

In addition to establishing a prima facie case of retaliation, Plaintiff's claims are reinforced by the unconstitutional conditions doctrine, which prohibits the government from conditioning benefits

on the surrender of constitutional rights. ***Perry v. Sindermann, 408 U.S. 593, 597 (1972)***. Even discretionary benefits may not be withheld for reasons that infringe constitutionally protected interests. ***Id.***; see also ***Elrod v. Burns, 427 U.S. 347, 359 (1976)***. This doctrine applies with particular force in higher education, where enrollment, tuition remission, and graduate assistantships are indispensable to academic opportunity and professional advancement.

Here, Defendants conditioned Plaintiff's Graduate Research Assistantship—providing stipend support, tuition remission, and health insurance—on acceptance of a retaliatory "*provisional status*" downgrade. In an August 22, 2025, email, Department Chair Dr. Yi Yang confirmed that Plaintiff was denied his assistantship "*because of his provisional status*" (Exhibit L). That status, however, was not the result of bona fide academic evaluation; it was manufactured in retaliation for Plaintiff's protected activities, including objecting to the dismantling of his signed Mentor–Mentee Agreement, opposing coerced co-mentorship, and submitting his July 9 rebuttal (Exhibit D).

This circular maneuver forced Plaintiff into an unconstitutional bind: either remain silent in the face of retaliation and coercive mentoring practices, or exercise his First Amendment rights and forfeit indispensable benefits—stipend, tuition remission, health insurance, and, as an F-1 visa holder, lawful immigration status. The Constitution does not tolerate such a choice. ***Perry v. Sindermann, 408 U.S. 593, 597 (1972)***; ***Elrod v. Burns, 427 U.S. 347, 359 (1976)***.

Exhibit L provides direct and unambiguous evidence that the denial of the Graduate Research Assistantship flowed from a retaliatory downgrade to "*provisional status*" manufactured in response to Plaintiff's protected conduct. This eliminates any need for inference: Defendants themselves expressly tied the denial of benefits to the retaliatory downgrade. The record thus establishes both that (i) the denial of benefits was a materially adverse action intended to deter

protected speech and association, and (ii) the assistantship was withheld as an impermissible condition on the exercise of constitutional rights.

Accordingly, the unconstitutional conditions doctrine supplies an independent and complementary basis for finding a substantial likelihood of success on the merits and granting injunctive relief.

### 5. Strict Scrutiny Applies

Government actions that burden core First Amendment rights are presumptively unconstitutional and subject to strict scrutiny. *Elrod v. Burns, 427 U.S. 347, 362 (1976)*. Under this standard, the government must demonstrate both a compelling interest and that its actions are narrowly tailored to achieve that interest. *Reed v. Town of Gilbert, 576 U.S. 155, 163 (2015)*.

Defendants' sanctions directly burdened Plaintiff's rights of speech, petition, and association. No compelling interest justifies these measures, and they were not narrowly tailored; rather, they were retaliatory, overbroad, punitive, and conscience-shocking. Because these actions cannot withstand strict scrutiny, Plaintiff demonstrates a substantial likelihood of success on his First Amendment retaliation claim.

### B. Equal Protection (Fourteenth Amendment / § 1983)

The Equal Protection Clause requires public universities to treat similarly situated students alike and prohibits intentional discrimination on the basis of race or national origin. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266–68 (1977)*. Discriminatory purpose may be established through contemporaneous statements, procedural departures, or disparate treatment. Race-based classifications are inherently suspect and subject to strict scrutiny. *Adarand Constructors, Inc. v. Peña, 515 U.S. 200, 227 (1995)*; *City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)*.

Equal Protection also prohibits arbitrary targeting. Under the "class-of-one" doctrine, liability arises where a plaintiff is intentionally treated differently from similarly situated individuals without a rational basis. ***Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)***.

## 1.  From Stereotypes to Sanctions and Policy: Climate of Racialized Labeling Infusing Administrative Actions

Plaintiff and his twin brother, both Black international students from Africa, were repeatedly subjected to stigmatizing labels by faculty and peers—"*bullies*," "*dominant*," and later "*disruptive*." These labels arose not from misconduct but from their active participation in classroom discussion and academic engagement.

These descriptors reflect racially coded stereotypes long used to portray the engagement of Black men as aggressive or threatening. By reframing ordinary academic contributions in this way, Defendants infused racial bias into faculty perceptions and departmental decision-making.

A contemporaneous statement by Department Chair Dr. Yi Yang underscores this bias. Dr. Yi Yang told Plaintiff that "*other faculty members are concerned that you and your brother dominate conversations and are not allowing other students to shine*." As the Department's chief decisionmaker, Dr. Yi Yang's remark is direct evidence that racially coded stereotypes shaped faculty perceptions—probative of discriminatory intent under ***Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 267 (1977)***.

This bias crystallized into formal sanctions on June 30, 2025. On that day, four faculty members—Drs. Erin Holmes, Marie Barnard, Meagen Rosenthal, and Yi Yang—labeled Alfred "*disruptive*" without citing any specific conduct or following University safeguards. That same day, Plaintiff

was threatened with reclassification to provisional status through a memorandum falsely alleging "*failure*" to submit the Abilities Transcript (Exhibit C).

The timing is telling. Alfred had just filed formal complaints alleging procedural and policy violations, while Plaintiff had submitted written objections to coercive mentoring practices. Within days, Alfred was branded "*disruptive*," Plaintiff was accused of fabricated deficiencies, and both were downgraded to provisional status. This close temporal proximity between protected activity and punitive measures is powerful evidence of retaliatory and discriminatory intent.

Thus, informal stereotypes ("*bullies*," "*dominant*") escalated into formal sanctions—indefinite probation for Alfred, provisional status and termination of assistantship funding for both brothers. These sanctions were punitive and conscience-shocking, depriving the brothers of academic standing and essential financial support despite Defendants' knowledge of the severe consequences. By embedding racialized perceptions into official memoranda and status determinations, Defendants transformed bias into institutional policy. This progression—from stereotype to sanction to policy—demonstrates discriminatory purpose under ***Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252 (1977)***, and confirms that race and national origin were impermissible motivating factors in Defendants' actions.

## 2. Disparate Treatment

The dismantling of Plaintiff's one-on-one Mentor-Mentee Agreement on June 13, 2025, cannot be separated from the racialized climate already described. Against this backdrop, the Department justified the unilateral restructuring of this signed agreement on the grounds of "*protecting*" a faculty member who planned to leave the University—a rationale that echoed racially coded stereotypes portraying Black students as threatening or domineering.

Ordinarily, when a mentor departs, students are reassigned to another faculty member to ensure continuity. Instead, Dr Yi Yang imposed coercive surveillance and dual mentorship on Plaintiff alone. Exhibit O confirms that every other student retained a single mentor. This selective treatment demonstrates Plaintiff was targeted not on academic grounds, but through a racialized lens that recast him as a source of danger rather than as a student entitled to good-faith support.

The selective invocation of "*protection*," particularly where the decisionmaker (Dr. Yi Yang) and the faculty member (Dr. Yinan Huang) purportedly being "*protected*" share a racial background distinct from Plaintiff's, underscores how bias shaped departmental action. The Equal Protection Clause prohibits such race-based decision-making. ***Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 267 (1977)***.

Again, taken together—the racialized climate, selective targeting, and departure from standard practice—constitute exactly the kind of historical background, disparate treatment, and procedural deviations that ***Arlington Heights*** recognizes as probative of discriminatory intent.

### 3.  Comparator Evidence

Exhibit O (Fall 2025 Mentor Assignment List) provides direct documentary proof of disparate treatment. Every other student in the Department of Pharmacy Administration was assigned a single mentor. Plaintiff alone was subjected to dual mentorship after the unilateral dismantling of his signed one-on-one Mentor Mentee Agreement.

This deviation from standard practice demonstrates that Plaintiff was intentionally singled out. Upon information and belief, no similarly situated white or U.S.-born student has ever been:

a.  Placed in dual mentorship contrary to a signed Mentor-Mentee Agreement;

b.  Subjected to compelled oversight by the Department Chair; or

25

c. Downgraded to provisional status at the beginning of a semester—with assistantship eligibility simultaneously revoked—in contravention of the M Book safeguard requiring such changes to occur "*between semesters or enrollment periods*."

The contrast documented in Exhibit O underscores intentional discrimination and constitutes classic comparator evidence of unequal treatment under the Equal Protection Clause. ***Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)***.

### C. Violation of Due Process (Fourteenth Amendment / § 1983)

The Fourteenth Amendment prohibits public universities from depriving students of liberty or property interests without a constitutionally adequate process. ***Dixon v. Alabama, 294 F.2d 150, 157–58 (5th Cir. 1961)***; ***Goss v. Lopez, 419 U.S. 565, 574–79 (1975)***. The sufficiency of process is measured under the ***Mathews v. Eldridge*** test, which weighs: (1) the significance of the private interests at stake, (2) the risk of erroneous deprivation and the value of additional safeguards, and (3) the government's asserted interests. ***424 U.S. 319, 335 (1976)***.

### 1. Protected Interests and Process Deprivation

Plaintiff held constitutionally protected liberty and property interests that were infringed without due process:

a. **Continued enrollment in good academic standing** — This is a recognized liberty interest indispensable to higher education and professional advancement. ***Dixon v. Alabama, 294 F.2d 150, 157 (5th Cir. 1961)***. Defendants deprived Plaintiff of this interest by imposing a retaliatory downgrade to "*provisional status*" without notice or hearing.

b. **Graduate assistantship and tuition remission** — These benefits constitute property interests grounded in written policies, a consistent history of renewal before each term, and Plaintiff's

reasonable reliance on uninterrupted continuation absent cause. Their termination without notice or an opportunity to be heard violated established due process norms.

c. **Mentor–Mentee Agreement (July 19, 2024)** — Formally approved by the Department, this agreement created contractual and reliance interests integral to Plaintiff's doctoral trajectory. Its unilateral dismantling, without a fair process, violated Plaintiff's protected interests.

d. **Reputation and visa eligibility** — The false designation of "*provisional status*" inflicted reputational harm and, when combined with the loss of funding and tuition remission, triggered the stigma-plus doctrine. *Paul v. Davis, 424 U.S. 693, 708–09 (1976)*. It also jeopardized Plaintiff's lawful F-1 visa status, which depends on both full-time enrollment and financial stability.

Taken together—continued enrollment in good academic standing, assistantship support, contractual mentoring, reputation, and lawful immigration status—these interests were arbitrarily deprived without notice, opportunity to be heard, or impartial review. Under *Mathews v. Eldridge, 424 U.S. 319, 335 (1976)*, the weight of these interests and the high risk of erroneous deprivation, set against the minimal burden of providing basic safeguards, underscore the constitutional inadequacy of Defendants' actions.

## 2. Procedural Due Process Violations

The Fourteenth Amendment guarantees that before a student is stripped of academic standing, assistantship funding, or related benefits, fair procedures must be afforded. *Dixon v. Alabama, 294 F.2d 150, 157–58 (5th Cir. 1961)*; *Goss v. Lopez, 419 U.S. 565, 574–79 (1975)*.

The University's M Book mandates specific safeguards before any dismissal or change of status for failure to meet non-coursework academic performance expectations: (1) written warning of

27

alleged academic performance deficiencies, (2) review by a faculty advisory or graduate education committee, (3) a recommendation forwarded with concurrence of the graduate coordinator or chair, and (4) final action by the Graduate Dean, ordinarily "between semesters or enrollment periods" (Exhibit R).

Here, these safeguards were wholly disregarded. Plaintiff never received a written warning of bona fide academic performance deficiencies, as none existed; no evidence of review by a faculty advisory or graduate education committee, and no evidence of actual academic performance deficiencies was documented. Instead, Defendants unilaterally manufactured a "*provisional status*" downgrade at the very start of a semester, in direct violation of the M Book's requirement that such actions occur "between semesters or enrollment periods." On August 22, 2025, Dean of Graduate School Annette Kluck compounded these violations by ratifying the downgrade after the fall semester had already begun. In doing so, the Dean acted with full knowledge that multiple M Book safeguards had been bypassed and issued an official letter that deliberately omitted any reference to those procedural requirements—thereby entrenching the defects at the institutional level rather than remedying them.

Defendants may argue that the June 30 memorandum or the July 19 email regarding the Abilities Transcript provided prior notice. They did not. Both communications improperly recast a developmental, non-evaluative tool into a punitive device, fabricating an academic performance deficiency where none existed. Neither document identified any specific evidence of academic performance deficiencies, nor did they afford Plaintiff a meaningful opportunity to contest the allegations before an impartial body. Such a sham notice—circular, retaliatory, and untethered to the procedural safeguards mandated by the M Book—cannot satisfy constitutional due process.

28

*Dixon v. Alabama, 294 F.2d 150, 158 (5th Cir. 1961)*; *Mathews v. Eldridge, 424 U.S. 319, 335 (1976)*.

Under *Mathews v. Eldridge, 424 U.S. 319, 335 (1976)*, the due process violation is unmistakable:

- **Private Interest**: Plaintiff's doctoral education, assistantship funding, health insurance, and F-1 visa status—interests of the highest constitutional and practical significance.

- **Risk of Error**: Extreme, as no bona fide academic performance deficiencies were documented and Plaintiff's detailed rebuttal letter was disregarded.

- **Burden of Safeguards**: Minimal, since adherence to the M Book's safeguards would have imposed negligible cost while ensuring basic fairness.

By disregarding both constitutional mandates and the University's own governing policies, Defendants deprived Plaintiff of even the most basic procedural protections. The Supreme Court has made clear that such denial of due process is actionable in itself, irrespective of outcome. *Carey v. Piphus, 435 U.S. 247, 266 (1978)*.

### 3.   Substantive Due Process Violations

The Fourteenth Amendment protects students from arbitrary and abusive exercises of government power that "shock the conscience." *Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846–47 (1998)*. Courts extend deference to genuine academic judgments, but not to sanctions imposed in bad faith, for retaliatory motives, or wholly detached from legitimate academic standards. *Bd. of Curators v. Horowitz, 435 U.S. 78, 91 (1978)*; *Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 225 (1985)*.

Here, Defendants' actions were not rooted in bona fide academic evaluation but in retaliatory abuse of authority. Their conduct was conscience-shocking in at least four respects:

29

1. **Fabricated Deficiency** — Defendants repurposed a developmental, non-evaluative tool into a punitive device, manufacturing a false "academic performance deficiency" that had no basis in fact or policy.

2. **Circular Sanctioning** — Defendants engineered a provisional status downgrade at the start of the semester and then invoked that contrived status as the exclusive basis to terminate Plaintiff's assistantship, tuition remission, health insurance, and visa eligibility.

3. **Arbitrariness and Bad Faith** — The sanctions disregarded established safeguards and timing requirements, departed from recognized academic norms, and served no legitimate educational purpose. Their function was not to uphold academic standards but to punish Plaintiff for his protected speech and association.

4. **Foreseeable and Severe Harm** — Defendants acted with full knowledge that Plaintiff's assistantship was his sole source of livelihood, covering food, housing, medical care, and tuition. They also knew that F-1 visa regulations categorically prohibit outside employment, rendering the assistantship indispensable to maintaining lawful status and continuous enrollment. By terminating this sole lifeline for both Plaintiff and his brother, Defendants not only eliminated their means of survival but also deliberately placed their immigration status and academic future in jeopardy. This calculated infliction of maximal harm elevates Defendants' conduct beyond mere arbitrariness into conscience-shocking abuse.

The cumulative effect of these sanctions—imposed in bad faith, punitive in nature, untethered from legitimate academic standards, and carried out in a manner that shocks the conscience—establishes a substantial likelihood of success on Plaintiff's substantive due process claim under the Fourteenth Amendment and 42 U.S.C. § 1983.

### D.  Mississippi Law: Breach of Contract, Implied Covenant, and Fiduciary Duty

Mississippi law provides independent and complementary grounds for relief. Even if the Court were to defer on Plaintiff's federal constitutional claims, he is substantially likely to prevail under state law. Claims for breach of contract and breach of fiduciary duty each independently warrant injunctive relief. Together, they confirm and reinforce the same pattern of retaliatory and arbitrary misconduct demonstrated throughout this case.

### 1.  Breach of Contract

Mississippi courts recognize the student–university relationship as contractual, enforceable through signed agreements, published policies, and established practices. ***Univ. of Miss. Med. Ctr. v. Hughes, 765 So. 2d 528, 534 (Miss. 2000)***. Plaintiff fully performed under this contractual framework, maintaining perfect academic standing and fulfilling all assistantship responsibilities.

Key contractual sources included:

- **Mentor–Mentee Agreement (July 19, 2024)**: A signed, department-approved contract guaranteeing Plaintiff a one-on-one mentoring relationship (Exhibit A).

- **Graduate School Policies (M Book)**: Safeguards requiring written notice of bona fide academic performance deficiencies, review by an appropriate faculty group, and that any status change ordinarily takes effect "between semesters or enrollment periods" (Exhibit R).

- **Established Departmental Practice**: Consistent issuance of assistantship renewal letters in June or July prior to Fall teaching assignments, creating settled expectations of continuity in funding and benefits.

Defendants materially breached these obligations by:

- Dismantling the signed one-on-one Mentor-Mentee Agreement;

- Misusing the Abilities Transcript—expressly designed as a developmental, non-evaluative tool—as a punitive device to fabricate an academic performance deficiency;

- Disregarding M Book safeguards requiring written notice of bona fide academic performance deficiencies, review by an appropriate faculty group, and that any status change ordinarily takes effect "between semesters or enrollment periods" (Exhibit R); and

- Withholding the customary renewal letter while simultaneously onboarding Plaintiff into assistantship duties.

These breaches caused immediate and severe harm: loss of stipend, tuition remission, mentoring stability, and reputational standing. Mississippi law prohibits such arbitrary and bad-faith frustration of contractual benefits. ***Cenac v. Murry, 609 So. 2d 1257, 1272 (Miss. 1992)***.

Even if Defendants argue that no express contractual term was technically breached, Mississippi law recognizes an implied covenant of good faith and fair dealing in every contract. ***Cenac v. Murry, 609 So. 2d 1257, 1272 (Miss. 1992)***. By repurposing developmental tools, withholding renewal letters, engineering a retaliatory downgrade to provisional status, and then using that contrived downgrade to terminate Plaintiff's assistantship, Defendants acted in bad faith and frustrated the core expectations of stable mentoring, fair evaluation, and continued funding that formed the foundation of Plaintiff's contractual relationship with the University.

## 2. Breach of Fiduciary Duty

In addition, Mississippi law imposes fiduciary duties where one party places trust and confidence in another who exercises influence or control. ***Lowery v. Guaranty Bank & Tr. Co., 592 So. 2d 79, 83 (Miss. 1991)***. This principle applies with particular force in the academic mentoring context,

where faculty wield direct authority over a student's academic progress, evaluation, and professional development. The Mississippi Educator Code of Ethics reinforces this duty, requiring mentors to act in the student's best interest, provide fair guidance, and avoid unnecessary harm. ***10 Miss. Code R. § 403-6.1***.

As Plaintiff's formally assigned mentor under a signed Mentor–Mentee Agreement, Dr. Yinan Huang occupied a position of trust carrying fiduciary obligations independent of contractual terms. Rather than safeguarding Plaintiff's academic trajectory, Dr. Yinan Huang acquiesced in unilaterally dismantling the signed one-on-one Mentor–Mentee Agreement and facilitated coerced dual mentorship under the Department Chair Dr. Yi Yang. By subordinating fiduciary obligations of care and good faith to departmental pressures, Dr. Yinan Huang compromised the integrity of the mentoring relationship, exposed Plaintiff to retaliatory harm, and undermined Plaintiff's justified reliance on the signed Mentor–Mentee Agreement.

This breach caused concrete harms: disruption of Plaintiff's doctoral progress, erosion of confidence in the integrity of the mentoring relationship, and heightened exposure to retaliatory sanctions. Because fiduciary duties flow from the relationship of trust itself—independent of formal policies or written agreements—this violation supplies an independent ground for relief under Mississippi law and further confirms the broader pattern of arbitrary and bad-faith misconduct.

**E.  Cumulative Likelihood of Success**

In conclusion, each of Plaintiff's claims, standing alone, demonstrates a substantial likelihood of success. Taken together, they render success on the merits overwhelmingly probable. Thus, the first Winter factor is not only satisfied but reinforced across multiple, independent grounds. Even

if one theory were discounted, the convergence of several well-supported claims confirms Plaintiff's strong likelihood of prevailing. That convergence also magnifies the irreparable nature of the harms and underscores the necessity of urgent injunctive relief.

II.     **Plaintiff Will Suffer Irreparable Injury Without the Injunction**

Absent immediate relief, Plaintiff will suffer constructive expulsion from his Ph.D. program, loss of livelihood, termination of lawful F-1 visa status, and foreclosure of access to this Court—harms that are immediate, irretrievable, and irreparable.

1. **Irreparable by Nature**

Courts consistently hold that constitutional violations, disruption of education, and loss of lawful immigration status are paradigmatic forms of irreparable harm. The Fifth Circuit has emphasized that "*when an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.*" ***Opulent Life Church v. City of Holly Springs, 697 F.3d 279, 295 (5th Cir. 2012)***. The Supreme Court likewise recognizes that "*the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.*" ***Elrod v. Burns, 427 U.S. 347, 373 (1976)***. And in the educational context, the principle is equally clear: "*an education once lost is irretrievable.*" ***Dixon v. Ala. State Bd. of Educ., 294 F.2d 150, 157 (5th Cir. 1961)***.

Here, Defendants' retaliatory sanctions have inflicted cascading harms—educational, financial, reputational, immigration-related, and psychological. Each injury is independently irreparable; together they constitute catastrophic harm that no later judgment could remedy.

2. **Academic Standing and Degree Progress**

The downgrade to "*provisional status*" (Exhibits J, M) constitutes constructive expulsion. Stripped of assistantship support, tuition remission, and good standing, Plaintiff cannot lawfully remain enrolled, conduct research, or advance toward his Ph.D. Each day under this status compounds the loss. Courts have long recognized that interruption of a student's education is paradigmatic

irreparable harm. ***Dixon v. Ala. State Bd. of Educ., 294 F.2d 150, 157 (5th Cir. 1961)***; ***Bd. of Curators v. Horowitz, 435 U.S. 78, 91–92 (1978)***.

The harm is both immediate and enduring. The "*provisional status*" label permanently stains Plaintiff's academic record, delays or prevents degree completion, and forecloses professional opportunities that no later judgment or monetary award can restore. A diploma withheld cannot be retroactively granted, and the professional momentum lost through interruption of study is irretrievable.

This injury is compounded by Defendants' dismantling of the July 19, 2024, signed Mentor–Mentee Agreement (Exhibit A), which guaranteed Plaintiff a stable one-on-one mentoring relationship central to his doctoral progress. By coercing dual mentorship under the Department Chair, Dr. Yi Yang, and misusing the Abilities Transcript as a disciplinary device, Defendants destroyed the very framework contractually promised to sustain Plaintiff's academic development. Courts give particular weight to irreparable harm flowing from breached written commitments, as is the case here.

Absent immediate injunctive relief, Plaintiff's doctoral education remains indefinitely stalled. Even a single lost semester threatens to derail his academic and professional trajectory. Such a loss is the very definition of irreparable harm: *no later judgment can restore timely Ph.D. completion under promised conditions or remove the taint from his academic record*.

### 3.  Graduate Assistantship and Livelihood

The Graduate Research Assistantship was not mere employment but the essential foundation of Plaintiff's doctoral program. It provided tuition remission, stipend support, and health insurance—

resources indispensable to full-time enrollment and doctoral progress. Its termination dismantled the very framework necessary for academic continuation.

For an F-1 visa holder, the stakes are even higher. Federal law requires both proof of financial support and continuous full-time enrollment. By eliminating tuition remission and stipend funding, Defendants knowingly eradicated the very conditions required to maintain lawful status. The harm is immediate and inevitable: *without the assistantship, Plaintiff cannot remain enrolled or lawfully stay in the United States*.

The termination also eliminated Plaintiff's sole livelihood, severing access to food, housing, and medical care. These cascading harms—loss of basic survival resources, health coverage, academic continuity, and lawful presence—are immediate, compounding, and quintessentially irreparable.

Absent injunctive relief restoring the assistantship, Plaintiff faces collapse of his doctoral program and loss of lawful U.S. presence—consequences that would not only devastate his education but also extinguish this Court's jurisdiction to adjudicate his claims.

## 4. Provisional Status and Academic Record

The August 21–22 downgrade to "*provisional status*" (Exhibits J, M) inflicted classic stigma-plus harm forbidden by the Due Process Clause. ***Paul v. Davis, 424 U.S. 693, 710–12 (1976)***; ***Doe v. Purdue Univ., 928 F.3d 652, 662–63 (7th Cir. 2019)***. Defendants branded Plaintiff as "*provisional*" on the basis of fabricated academic deficiencies, thereby both falsely signaling failure and stripping him of concrete entitlements—assistantship funding, tuition remission, and health insurance.

This reputational harm is enduring. Once entered on a doctoral transcript, "*provisional status*" operates as a scarlet mark that shadows Plaintiff in applications for fellowships, internships, and

employment. No monetary award can erase the notation or restore lost credibility. Courts consistently recognize this stigma-plus combination—false reputational injury coupled with deprivation of concrete entitlements—as paradigmatic irreparable harm. ***Tex. Faculty Ass'n v. Univ. of Tex. at Dallas, 946 F.2d 379, 383–84 (5th Cir. 1991)***.

The downgrade also endangers Article III jurisdiction. By altering Plaintiff's status and cutting off funding, Defendants destabilized the conditions required to maintain lawful F-1 status. If compelled to leave the United States, Plaintiff would lose standing to obtain relief on the merits, be unable to participate in hearings or discovery, and face arguments that the case is moot. Federal courts consistently grant preliminary injunctive relief to prevent defendants from mooting litigation through the very conduct under challenge. ***Friends of the Earth v. Laidlaw, 528 U.S. 167, 189 (2000)***.

Accordingly, the August 21–22 reclassification to provisional status inflicts immediate and ongoing stigma-plus harm—permanently marking Plaintiff's academic record, stripping him of educational and financial entitlements, and placing this Court's jurisdiction at risk by threatening his lawful presence in the United States.

### 5.  Immigration Status and Lawful Presence

Federal regulations require F-1 students to maintain both continuous full-time enrollment and documented financial support for tuition and living expenses. ***8 C.F.R. § 214.2(f)(5), (6), (7)(i)***. By reclassifying Plaintiff to "*provisional status*" (Exhibits J, M) and cutting off the Graduate Research Assistantship that furnished tuition remission, stipend, and health insurance (Exhibit L), Defendants eliminated the very conditions necessary for lawful presence.

The consequence is inevitable: *without full-time enrollment and funding, SEVIS will terminate Plaintiff's F-1 status*. Loss of lawful presence would not merely pause his education—it would end his doctoral career, foreclose professional opportunities, and inflict harms no damages could repair. Courts consistently hold that immigration-related harms of this nature constitute irreparable injury. ***See Chavez v. INS, 783 F.2d 1342, 1346 (5th Cir. 1986)***; ***Texas v. United States, 809 F.3d 134, 187 (5th Cir. 2015)***; ***Nken v. Holder, 556 U.S. 418, 435 (2009)***. And unlike the generalized removal concerns in ***Nken***, Defendants here deliberately created conditions that make loss of status a certainty absent relief.

Accordingly, preserving Plaintiff's lawful presence is essential both to avert catastrophic, irreparable harm to his education and career and to protect this Court's jurisdiction to decide the case on the merits.

## 6. Professional Reputation and Career Prospects

The downgrade to "*provisional status*" (Exhibits J, M) imposed reputational stigma that directly undermines Plaintiff's professional future. In academia, a transcript entry of academic deficiency shadows every application for fellowships, internships, and academic or professional positions. Once recorded, the "*provisional status*" label becomes a lasting mark of failure that no damages award or later vindication can erase from evaluators' perceptions.

This harm is especially grave because academic advancement depends on demonstrated competence and uninterrupted doctoral progress. The false stigma of academic deficiency undermines Plaintiff's credibility, excluding him from grants, collaborations, and career-building opportunities at the most critical stage of his professional development.

Even a later victory at trial cannot undo the damage: *diminished competitiveness and compromised recommendations are irretrievable*. These harms are immediate, compounding, and irreparable—providing an independent and sufficient basis for injunctive relief.

## 7.  Psychological Harm and Chilling Effect

Defendants' retaliatory actions inflicted profound psychological harm and chilled constitutionally protected activity. Instead of pursuing his doctoral research and academic responsibilities, Plaintiff has been forced into a climate of intimidation and uncertainty. The dismantling of his July 19, 2024, signed Mentor–Mentee Agreement (Exhibit A), surveillance of research meetings, and racially coded labeling ("bullies," "dominant") triggered severe anxiety, depression, and loss of trust in the academic environment. These harms are ongoing, cumulative, and irreparable.

Courts consistently hold that psychological distress linked to professional identity and constitutional violations constitutes irreparable harm. ***Chalk v. U.S. Dist. Ct., 840 F.2d 701, 709–10 (9th Cir. 1988)***. The Fifth Circuit likewise presumes irreparable harm whenever constitutional rights are at stake. ***Opulent Life Church v. City of Holly Springs, 697 F.3d 279, 295 (5th Cir. 2012)***.

The chilling effect is equally clear. By retaliating against Plaintiff for objecting to coerced co-mentorship and procedural violations, Defendants conveyed that engaging in protected activity would be punished. The Supreme Court has held that chilling First Amendment activity constitutes irreparable harm. ***Elrod v. Burns, 427 U.S. 347, 373 (1976)***. In the academic context, the harm is heightened: the Court has emphasized that *academic freedom is "a special concern of the First Amendment"* and that *its suppression undermines the "marketplace of ideas" essential to higher education*. ***Keyishian v. Bd. of Regents, 385 U.S. 589, 603 (1967)***.

These harms—psychological distress, erosion of trust, and suppression of protected expression—cannot be remedied through damages or delayed reinstatement. They represent a distinct and paradigmatic form of irreparable injury, independently warranting immediate injunctive relief.

**8.  Jurisdiction at Risk**

Finally, and most critically, absent immediate injunctive relief, Defendants' actions jeopardize this Court's ability to adjudicate the case on the merits. By stripping away the conditions required for continued enrollment and lawful presence, Defendants have created a concrete risk of Plaintiff's constructive removal from both his doctoral program and the United States.

If compelled to leave the United States, Plaintiff would lose standing to obtain relief on the merits, be unable to participate meaningfully in hearings or discovery, and expose the case to arguments of mootness. Federal courts routinely invoke their equitable authority to prevent defendants from undermining judicial review through the very conduct being challenged. ***Friends of the Earth v. Laidlaw, 528 U.S. 167, 189 (2000)***. Courts have likewise enjoined student disciplinary actions where loss of enrollment or status would otherwise foreclose meaningful adjudication. ***Doe v. Univ. of Cincinnati, 872 F.3d 393, 407 (6th Cir. 2017)***.

Accordingly, preliminary relief is essential to protect Plaintiff's rights and to preserve this Court's Article III jurisdiction by ensuring Plaintiff can remain in the United States to fully litigate his claims on the merits.

**Summary of Irreparable Harm**

Plaintiff faces overlapping harms that are immediate, compounding, and irreparable. Defendants' actions have derailed his doctoral progress, stripped him of the financial and institutional support required for enrollment, jeopardized his lawful F-1 status, imposed reputational stigma, and

inflicted psychological harm while chilling protected expression. Each has been recognized as a paradigmatic irreparable injury. See ***Elrod v. Burns, 427 U.S. 347, 373 (1976)*** (loss of constitutional freedoms is irreparable); ***Dixon v. Ala. State Bd. of Educ., 294 F.2d 150, 157 (5th Cir. 1961)*** (education once lost is irretrievable); ***Opulent Life Church v. City of Holly Springs, 697 F.3d 279, 295 (5th Cir. 2012)*** (no further showing needed where constitutional rights are implicated).

Preliminary injunctive relief would simply preserve the status quo—continued enrollment in full standing, funding, and lawful presence—until the Court adjudicates the merits. The equities therefore tip decisively in Plaintiff's favor, and the second Winter factor weighs heavily toward injunctive relief.

### III.    The Balance of Equities Strongly Favors Plaintiff

The third Winter factor—the balance of equities—overwhelmingly favors Plaintiff. The University needs only to take a single, routine step: *preserve Plaintiff's full standing academic status*. Because the assistantship termination was expressly predicated on the manufactured downgrade of Plaintiff to "provisional status", restoring Plaintiff's status to full standing effectively reinstates tuition remission, stipend funding, and health insurance. This modest administrative action imposes no meaningful burden on the University, while denial of relief would inflict catastrophic, irreversible, and life-altering harm on Plaintiff.

### 1.  Preserving the Status Quo

The relief Plaintiff seeks is narrowly tailored and restorative: *preservation of his full academic standing status as it existed before August 22*. This is the "last peaceable status quo" that preliminary injunctions are designed to maintain. ***Canal Auth. of State of Fla. v. Callaway, 489 F.2d 567, 576 (5th Cir. 1974)***.

Such relief would not alter academic standards or intrude on faculty judgment. It would merely suspend disputed sanctions until their legality is resolved. For the University, compliance entails only routine administrative action. For Plaintiff, denial of relief means continued exposure to sanctions already shown to cause irreparable harm.

### 2.  No Cognizable Harm to the University

Defendants may argue that interim relief intrudes on academic autonomy. But broad claims of "institutional discretion" cannot excuse violations of constitutional and contractual rights. As the Fifth Circuit has held, a public university "*has no legitimate interest in enforcing an unlawful policy*." ***Janvey v. Alguire, 647 F.3d 585, 600 (5th Cir. 2011)***.

Moreover, the burden of compliance is minimal. Restoring Plaintiff's full academic standing status requires only routine administrative steps that the University already performs each semester. Faculty remain free to evaluate his coursework and research under existing standards; the injunction merely suspends enforcement of the disputed sanctions pending judicial review.

By contrast, denying relief would result in constructive expulsion, loss of livelihood, termination of lawful immigration status, and permanent reputational stigma—harms courts have consistently deemed irreparable. See ***Dixon v. Ala. State Bd. of Educ., 294 F.2d 150, 157–58 (5th Cir. 1961)***; ***Doe v. Univ. of Cincinnati, 872 F.3d 393, 401–02 (6th Cir. 2017)***.

Accordingly, Defendants face no cognizable harm from complying with constitutional and contractual obligations, while Plaintiff faces catastrophic, irreparable harm if injunctive relief is denied. The balance of equities, therefore, weighs decisively in Plaintiff's favor.

### 3.  Overwhelming Harm to Plaintiff if Denied

The harms Plaintiff faces absent relief are neither speculative nor remediable. They are immediate, compounding, and irreversible. As shown in prior sections, Defendants have:

- terminated Plaintiff's Graduate Research Assistantship, eliminating the financial and institutional foundation required for enrollment and lawful presence;

- imposed a false "*provisional status*" classification, inflicting reputational stigma inseparably tied to the loss of concrete entitlements; and

- dismantled the conditions necessary to maintain F-1 visa eligibility, making removal from both his program and the United States a certainty absent relief.

Individually, each of these harms is recognized as irreparable under binding precedent. Collectively, they amount to constructive expulsion, with cascading consequences to Plaintiff's

education, livelihood, immigration status, and professional trajectory. Courts have consistently held that the loss of constitutional rights, the interruption of education, or the loss of lawful presence in the United States each constitutes irreparable injury. ***Elrod v. Burns, 427 U.S. 347, 373 (1976)***; ***Dixon v. Ala. State Bd. of Educ., 294 F.2d 150, 157 (5th Cir. 1961)***; ***Chavez v. INS, 783 F.2d 1342, 1346 (5th Cir. 1986)***.

Accordingly, the equities compel only one conclusion: *preliminary injunctive relief is of the utmost need*. Denial would result in constructive expulsion, loss of lawful status, and permanent damage to Plaintiff's professional future—injuries courts uniformly deem irreparable. Granting injunctive relief, by contrast, imposes only the minimal obligation of preserving the status and benefits Plaintiff lawfully held before the challenged sanctions. Where the burden on Defendants is negligible and the burden on Plaintiff is catastrophic, equity weighs decisively in Plaintiff's favor.

**IV.    The Public Interest Compels Granting the Injunction**

Preliminary injunctive relief serves not only Plaintiff's interests but also the public's compelling stake in enforcing constitutional guarantees, civil rights protections, and the integrity of higher education. As the Supreme Court emphasized, "*there is the highest public interest in the due observance of all the constitutional guarantees.*" ***Elrod v. Burns, 427 U.S. 347, 373 (1976)***. The Fifth Circuit likewise confirms that "*it is always in the public interest to prevent the violation of a party's constitutional rights.*" ***Opulent Life Church v. City of Holly Springs, 697 F.3d 279, 295 (2012)***. Enjoining Defendants therefore advances the public interest by ensuring that a publicly funded university complies with constitutional and statutory mandates, protects fair access to higher education, and maintains the integrity of academic processes pending final adjudication.

**1.    Protecting Constitutional Guarantees.**

The public has a compelling interest in ensuring that public universities act within constitutional limits. As the Supreme Court has emphasized, "*there is the highest public interest in the due observance of all the constitutional guarantees.*" ***Elrod v. Burns, 427 U.S. 347, 373 (1976)***. The Fifth Circuit likewise holds that "*it is always in the public interest to prevent the violation of a party's constitutional rights.*" ***Opulent Life Church v. City of Holly Springs, 697 F.3d 279, 295 (2012)***.

Enjoining Defendants from enforcing retaliatory and procedurally defective sanctions vindicates not only Plaintiff's rights but also the broader public interest. Upholding constitutional protections in this case ensures accountability in publicly funded institutions and reaffirms the principle that students cannot be punished for exercising protected rights.

**2.    Safeguarding Equal Access and Academic Freedom.**

Equal access to higher education is a matter of compelling public concern. Retaliation in academic settings has systemic effects: *it deters students from exercising protected rights and undermines the integrity of the academic environment*. The Supreme Court has made clear that retaliatory acts are unlawful when they "*dissuade a reasonable person*" from engaging in protected activity. ***Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)***.

Here, defendants' sanctions send a broader signal that engaging in protected activity invites reprisal—through academic penalties, financial loss, or immigration jeopardy. Such practices chill academic freedom, suppress equal participation, and undermine public confidence in the integrity of higher education.

Preliminary injunctive relief safeguards more than Plaintiff's rights; it advances the public's compelling interest in preserving universities as forums of learning and the "*marketplace of ideas*," free from retaliation. ***Keyishian v. Bd. of Regents, 385 U.S. 589, 603 (1967)***.

### 3.   Academic Autonomy and Legal Boundaries.

Defendants may invoke "academic autonomy" as a shield, but that discretion is limited. Courts defer only to bona fide academic judgments—not to sanctions that are retaliatory, pretextual, or so arbitrary as to violate constitutional rights. See ***Doe v. Univ. of Cincinnati, 872 F.3d 393, 401–02 (6th Cir. 2017)***; ***Regents of the Univ. of Mich. v. Ewing, 474 U.S. 214, 225 (1985)***.

The sanctions at issue were not genuine academic evaluations but administrative retaliation cloaked in academic language. Enjoining them would not intrude on legitimate faculty prerogatives. Professors would retain full authority to assess Plaintiff's coursework and research under established standards. The injunction would simply ensure that academic discretion operates within lawful boundaries, free from pretext and constitutional violations.

## 4. Broader Public Policy and Institutional Integrity

The public has no legitimate interest in allowing a state university to persist in unlawful retaliation or discrimination. On the contrary, the public interest is served when courts hold public institutions accountable to constitutional and statutory mandates. As the Fifth Circuit has made clear, "*a party suffers no harm from being prevented from violating the law*." ***Janvey v. Alguire, 647 F.3d 585, 600 (5th Cir. 2011)***.

Granting relief here ensures that public resources support lawful education, not unlawful exclusion, and affirms the values of accountability, fairness, and integrity in higher education. Enjoining Defendants thus serves more than Plaintiff's rights; it vindicates the public's stake in ensuring universities operate within constitutional limits and sustain public trust in the academic system.

## 5. Conclusion

Taken together, these considerations confirm that the public interest overwhelmingly favors preliminary injunctive relief. Upholding constitutional guarantees, protecting equal access to higher education, and ensuring that academic discretion is exercised within lawful limits are all compelling public purposes. Denial of relief would not only devastate Plaintiff but also erode confidence in the fairness of higher education and weaken the rule of law. By contrast, granting relief preserves constitutional norms, safeguards equal opportunity, and sustains public trust in institutions funded by and accountable to the public. The fourth Winter factor is therefore decisively satisfied.

## V.    Anticipated Defenses Fail

Defendants may attempt to evade judicial review through several doctrinal defenses. None withstands scrutiny.

### 1.  Sovereign Immunity

Eleventh Amendment immunity poses no bar. Under *Ex parte Young*, sovereign immunity does not shield state officials from suits seeking prospective injunctive relief to halt ongoing violations of federal law. ***209 U.S. 123, 159–60 (1908)***.

Plaintiff seeks only forward-looking relief—reinstatement of his Graduate Research Assistantship and suspension of unlawful sanctions. Reinstatement is a classic form of prospective relief, and no retroactive damages are sought from the state treasury.

The Fifth Circuit has reaffirmed this principle: "*Ex parte Young permits suits for injunctive relief against state officials in their official capacities to end ongoing violations of federal law*." ***NiGen Biotech, L.L.C. v. Paxton, 804 F.3d 389, 394 (5th Cir. 2015)***. That is precisely the relief sought here.

### 2.  Qualified Immunity

Qualified immunity does not shield the individual Defendants. That doctrine protects officials only when their conduct does not violate "*clearly established*" rights that a reasonable person would have known. ***Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)***.

For decades, it has been clearly established that:

- **Due Process Rights**: Public university students hold constitutionally protected property and liberty interests in continued enrollment in good standing, financial aid, and academic

reputation. These cannot be taken without notice and a meaningful opportunity to be heard. ***Goss v. Lopez, 419 U.S. 565, 579 (1975)***; ***Bd. of Curators v. Horowitz, 435 U.S. 78, 85–86 (1978)***.

- **Freedom from Retaliation**: State officials may not punish individuals for exercising constitutional rights, including free speech and petitioning activity. ***Elrod v. Burns, 427 U.S. 347, 359–60 (1976)***; ***Keenan v. Tejeda, 290 F.3d 252, 258–59 (5th Cir. 2002)***.

The Fifth Circuit has repeatedly denied qualified immunity in cases where state actors disregarded these principles. See ***Keenan, 290 F.3d at 259*** (First Amendment retaliation clearly established); ***Frazier v. Garrison I.S.D., 980 F.2d 1514, 1526 (5th Cir. 1993)*** (student due process rights clearly established); ***Beattie v. Madison Cnty. Sch. Dist., 254 F.3d 595, 601 (5th Cir. 2001)*** (continued enrollment is a protected property interest).

No reasonable university official could have believed it lawful to unilaterally and coercively dismantle a signed Mentor-Mentee Agreement, impose "*provisional status*" without notice or hearing, or terminate a Graduate Research Assistantship on contrived grounds. These actions directly violated clearly established law safeguarding students' due process and First Amendment rights.

Because Defendants' conduct falls squarely within well-settled prohibitions, qualified immunity is unavailable.

### 3. Academic Judgment

Defendants may argue their actions constitute "*academic judgments*" entitled to deference. That contention fails. The Supreme Court has long distinguished between bona fide academic evaluations—such as grading or research review—and punitive measures imposed for non-

academic reasons, which warrant no deference. ***Bd. of Curators v. Horowitz, 435 U.S. 78, 85–86 (1978)***; ***Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 225 (1985)***.

Deference applies only to judgments about academic competence, not to sanctions divorced from scholarship. ***Powell v. Syracuse Univ., 580 F.2d 1150, 1153 (2d Cir. 1978)***. When universities disregard their own rules or constitutional protections, judicial oversight is not only proper but necessary. ***Doe v. Univ. of Cincinnati, 872 F.3d 393, 401–02 (6th Cir. 2017)***. Retaliation and discrimination, moreover, fall outside the sphere of academic freedom. ***Zahorik v. Cornell Univ., 729 F.2d 85, 92 (2d Cir. 1984)***.

Here, Plaintiff's strong academic record was unblemished. Defendants nonetheless repurposed the Abilities Transcript—explicitly defined as "*developmental and non-evaluative*" (Exhibits P, Q)—to fabricate an "academic performance deficiency", reclassify him as "provisional," and terminate his assistantship. That misuse of a non-evaluative tool, contrary to binding policy, was administrative retaliation cloaked in academic terms.

The Supreme Court has emphasized that deference disappears where sanctions reflect "*a substantial departure from accepted academic norms*." ***Horowitz, 435 U.S. at 85–86***; ***Ewing, 474 U.S. at 225***. Defendants' shifting rationales, retaliatory timing, and disregard of policy confirm that no bona fide academic judgment occurred.

Accordingly, Defendants cannot shield retaliation under claims of academic discretion. Judicial deference has no application to sanctions imposed in bad faith or in violation of constitutional and contractual guarantees. In such cases, federal courts not only may—but must—intervene.

### 4.  At-Will Employment

Defendants may argue that Plaintiff's Graduate Research Assistantship was terminable "*at will*." Mississippi law forecloses that defense.

First, the public policy exception applies. Mississippi recognizes that termination in retaliation for asserting statutory or constitutional rights violates public policy. ***McArn v. Allied Bruce-Terminix Co., 626 So. 2d 603, 607 (Miss. 1993)***. Plaintiff's termination followed directly from his exercise of protected rights and falls squarely within McArn.

Second, university policies create binding obligations. The Mississippi Supreme Court has held that handbooks, policies, and appointment letters are enforceable contracts. ***Univ. of Miss. Med. Ctr. v. Hughes, 765 So. 2d 528, 534–35 (Miss. 2000)***. Plaintiff's assistantship was governed by such documents, which permitted termination only for cause, bona fide funding shortfalls, or programmatic need—not retaliation.

Third, Mississippi law imposes an implied covenant of good faith and fair dealing, even where discretion exists. ***Cenac v. Murry, 609 So. 2d 1257, 1272 (Miss. 1992)***. Defendants violated this covenant by using the provisional status downgrade and termination of assistantship as retaliatory tools against Plaintiff's protected activity.

Thus, Defendants cannot shield their conduct under "*at-will*" employment. Plaintiff's assistantship was contractually protected, and its retaliatory termination is unlawful under both Mississippi's public-policy exception and settled contract law. This further strengthens Plaintiff's likelihood of success and the equities supporting preliminary injunctive relief.

## 5. Exhaustion of Remedies

Defendants may argue that Plaintiff was required to exhaust internal grievance procedures or administrative remedies before filing suit. That argument fails.

First, exhaustion is not required for constitutional claims. The Supreme Court has held that § 1983 plaintiffs alleging constitutional violations may proceed directly to federal court. ***Patsy v. Bd. of Regents of State of Fla., 457 U.S. 496, 516 (1982)***.

Second, any further pursuit would have been futile. Plaintiff submitted detailed rebuttals (Exhibit D), which Defendants ignored or dismissed. Courts do not require exhaustion where remedies are inadequate or futile. ***McCarthy v. Madigan, 503 U.S. 140, 148 (1992)***. Plaintiff's July 9 letter—seeking transparency and fairness—was disregarded, confirming that additional steps would have been meaningless.

Third, Plaintiff's filing with the U.S. Department of Education's Office for Civil Rights (OCR) does not bar this action. OCR complaints are non-exclusive and cannot foreclose parallel judicial relief, particularly where immediate injunctive relief is required to prevent irreparable harm.

Accordingly, exhaustion poses no barrier. Plaintiff acted diligently, pursued remedies in good faith, and properly invoked this Court's jurisdiction.

In conclusion, none of the Defendants' anticipated defenses—including sovereign immunity, qualified immunity, academic deference, at-will employment, or exhaustion—survive scrutiny. Their collapse confirms that Plaintiff's claims are properly before this Court and that judicial intervention is necessary to halt ongoing violations of federal rights.

## PRAYER FOR RELIEF

For the reasons stated above, Plaintiff respectfully requests that this Court issue a preliminary injunction granting the following narrowly tailored relief pending final judgment:

1. **Restoration of Academic Status**. Maintain Plaintiff's enrollment as a full-time doctoral student in full academic standing by vacating the August 21–22, 2025, sanctions and removing all "provisional status" designations from his record.

2. **Reinstatement of Graduate Assistantship**. Order Defendants to prospectively restore and maintain Plaintiff's Graduate Research Assistantship (or equivalent appointment), including stipend, tuition remission, and health insurance. Because the assistantship termination was based solely on the contrived "provisional status" downgrade, reinstatement necessarily results in preservation of the status quo ante, restoring Plaintiff's academic status to full standing.

3. **Enforcement of Signed Mentorship Agreement**. Enforce the July 19, 2024, signed Mentor–Mentee Agreement by restoring Plaintiff to a one-on-one faculty mentoring arrangement. Dr. Yi Yang should be removed as an imposed "co-mentor," and Plaintiff permitted to continue with Dr. Yinan Huang (or another qualified faculty member, if necessary) as his primary mentor. Any future changes must comply with written policy and require Plaintiff's informed consent.

4. **Expungement of Retaliatory Records**. Expunge—or at a minimum seal—from Plaintiff's academic file all retaliatory or procedurally defective documents, including the June 30, 2025 memorandum, the August 21 recommendation, the August 22 letter, and related accusations of "non-compliance." These records shall not be used or disseminated for any academic or professional purpose.

5. **Prohibition of Retaliation**. Enjoin Defendants and their agents from engaging in any further retaliatory, coercive, or intimidating actions against Plaintiff, including changes to academic status, termination of financial support, or new disciplinary measures arising from the incidents underlying this action.

6. **Waiver or Nominal Bond**. Pursuant to Rule 65(c), waive the security requirement or, in the alternative, set bond at a nominal amount not exceeding $1. Courts have discretion to minimize bond where, as here, equitable relief advances the public interest and imposes no cognizable harm on Defendants. See *City of Atlanta v. Metro. Atlanta Rapid Transit Auth., 636 F.2d 1084, 1094 (5th Cir. 1981)*.

## CONCLUSION

Absent immediate injunctive relief, Plaintiff will suffer constructive expulsion, loss of lawful F-1 status, and lasting damage to his academic and professional future. Termination of enrollment, loss of assistantship funding, tuition remission, health insurance, and visa eligibility are quintessential forms of irreparable harm that no later remedy can cure. See *Dixon v. Ala. State Bd. of Educ., 294 F.2d 150, 157 (5th Cir. 1961)*.

The relief requested does not waive academic standards or confer unearned benefits. It simply preserves the status quo ante—Plaintiff's good standing, assistantship, and access to education— pending adjudication. That is the core purpose of Rule 65: *to prevent irreparable injury while the Court considers the merits*. See *Winter v. Nat. Res. Def. Council, 555 U.S. 7, 20 (2008)*.

Because Plaintiff has shown (1) a strong likelihood of success, (2) grave and irreparable harm absent relief, (3) no cognizable burden on Defendants, and (4) the public's compelling interest in protecting constitutional rights, this Court should grant his Motion for Temporary Restraining

Order and Motion for Preliminary Injunction. Immediate restoration of his full academic standing and assistantship is essential to prevent ongoing violations and preserve the Court's ability to afford complete justice.

Respectfully submitted,

_____

Ehiremen Bennard Eriakha

Plaintiff, Pro Se

1802 Jackson Avenue West

Oxford, MS 38655

Phone: (662) 281-4676

Email: eriakhabernard@gmail.com

Date: September 8, 2025

## CERTIFICATE OF SERVICE

Pursuant to ***Fed. R. Civ. P. 5(b)(2)(C), Fed. R. Civ. P. 65(b)(1)(B),*** and ***28 U.S.C. § 1746***, I certify under penalty of perjury that on September 18, 2025, I served a true and correct copy of:

- Urgent and Necessitous Renewed Motion for Temporary Restraining Order (TRO)

- Urgent and Necessitous Renewed Motion for Preliminary Injunction

- Memorandum of Law in Support of Preliminary Injunction

- Declaration of Ehiremen Bennard Eriakha in Support of TRO and Preliminary Injunction

- Notice of Service under ***Rule 5*** and, in the alternative, Certification under Rule ***65(b)(1)(B)***

- Motion for Leave to Exceed Page Limit

- Motion to Waive Security Requirement

- Motion and Notice to Correct the Record

- Declaration in Support of Motion and Notice to Correct the Record

- Verified Pleading Declaration (Verification of Complaint)

- Exhibits A–T, V, W

On the following recipients by **U.S. Mail, first-class, postage prepaid** (service complete upon mailing under ***Rule 5(b)(2)(C)***):

**The University of Mississippi and all Official-Capacity Defendants:**

- **Office of General Counsel**

   University of Mississippi,

   209 Lyceum,

   University, MS 38677

**Individual-Capacity Defendants (Campus Office Address):**

- **Dr. Yi Yang**

  Chair, Department of Pharmacy Administration

  University of Mississippi, School of Pharmacy

  232 Faser Hall,

  University, MS 38677

  yiyang@olemiss.edu

- **Dr. Marie Barnard**

  Graduate Program Coordinator, Department of Pharmacy Administration

  University of Mississippi, School of Pharmacy

  234 Faser Hall,

  University, MS 38677

  mbarnard@olemiss.edu

- **Dr. Annette Kluck**

  Dean of the Graduate School

  University of Mississippi, Graduate School

  University, MS 38677

  askluck@olemiss.edu

- **Dr. Yinan Huang**

  Faculty Member, Department of Pharmacy Administration

  University of Mississippi, School of Pharmacy

  235 Faser Hall,

  University, MS 38677

yhuang9@olemiss.edu

**Clerk of Court (for filing in the record):**

- **Clerk of Court**

U.S. District Court, Northern District of Mississippi – Oxford Division

Federal Building, 911 Jackson Avenue East

Oxford, MS 38655

(Clerk's copy includes **Exhibit U** [previously signed and stamped memorandum] and **Exhibit X** [proof of mailing]).

Courtesy copies were also transmitted by email to the above recipients on September 18, 2025.

Executed this 18th day of September, 2025, in Oxford, Mississippi.

_____

Ehiremen Bennard Eriakha

Plaintiff, Pro Se

1802 Jackson Ave. W., Apt. 83

Oxford, MS 38655

Tel: (662) 281-4676

Email: eriakhabernard@gmail.com

# APPENDIX E

## UNITED STATES DISTRICT COURT

for the

Northern District of Mississippi

Oxford Division

| | | |
|---|---|---|
| Ehiremen Bennard Eriakha | ) | Case No.    3:25-cv-00250 |
| *Plaintiff(s)* | ) | |
| **-v-** | ) | |
| | ) | |
| University of Mississippi; Dr. Yi Yang; Dr. | ) | |
| Marie Barnard; Dr. Annette Kluck; Dr. Yinan | ) | |
| Huang | ) | |
| *Defendant(s)* | ) | |

**DECLARATION OF EHIREMEN BENNARD ERIAKHA IN SUPPORT OF MOTION**

**FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

1

I, Ehiremen Bennard Eriakha, declare under penalty of perjury pursuant to *28 U.S.C. § 1746* that the following is true and correct:

## I.     BACKGROUND

1. I am the Plaintiff in this action. I submit this sworn Declaration in support of my Urgent and Necessitous Motion for Temporary Restraining Order ("TRO") and Renewed Motion for Preliminary Injunction. This Declaration establishes the factual record necessary for the Court's consideration of emergency relief to preserve the status quo ante and prevent irreparable harm.

2. I am an international Ph.D. student in the Department of Pharmacy Administration at the University of Mississippi. Since enrolling in 2023, I have maintained a perfect 4.0 GPA, presented my research at national conferences, and received multiple academic honors. No academic deficiencies or disciplinary issues have ever been recorded against me, and I have continuously remained in good standing. True and correct copies of my academic transcript and awards are attached as **Exhibit W**.

## II.     CONTINUOUS AND ESCALATING RETALIATORY SEQUENCE

3. **Protected Expectations Established**: On July 19, 2024, I executed a department-approved Mentor–Mentee Agreement guaranteeing one-on-one mentorship. This Agreement formally established clear expectations for my doctoral training and professional development and created a stable framework on which I reasonably relied. A true and correct copy of the signed Mentor–Mentee Agreement is attached as **Exhibit A**.

4. **Unilateral Dismantling and Coercive Oversight**: On June 13, 2025, Defendant Dr. Yi Yang unilaterally dismantled my one-on-one Mentor–Mentee Agreement, imposed involuntary co-

mentorship, and began personally attending my research meetings. This abrupt and selective change disrupted the express terms and settled expectations created by the signed Mentor-Mentee agreement, introduced coercive oversight, and undermined the psychological safety essential to effective mentoring. I promptly submitted written objections documenting these concerns. True and correct copies of my objections and correspondence are attached as **Exhibits B, D, E**.

5. **Misuse of the Abilities Transcript ("AT")**: On June 30, 2025, Defendants issued a memorandum alleging "failure" to submit my Abilities Transcript ("AT")—a tool expressly designated by University policy as developmental and non-disciplinary—and threatened to reclassify me to "provisional status". This punitive use of the AT represented a substantial departure from its intended purpose and created a wholly unfounded appearance of academic deficiency, providing strong evidence of retaliatory motive. True and correct copies of the AT form, guide, and memorandum are attached as **Exhibits P, Q, C**.

6. **Due Process Violations**:

   a. On July 9, 2025, I submitted a detailed written letter contesting the June 30 memorandum as factually false, procedurally defective, and retaliatory. In the letter, I specifically requested withdrawal of the memorandum and restoration of my original one-on-one mentoring arrangement. I copied the letter to all relevant administrators, including the Provost, thereby exhausting available internal remedies. The University disregarded my letter entirely, which denied me a meaningful opportunity to be heard—the core requirement of procedural due process. A true and correct copy of my letter is attached as **Exhibit D**.

b. On August 21–22, 2025, Defendants downgraded me to "provisional" status. The downgrade memoranda did not identify any documented academic deficiency and were issued during an active academic term, despite the University's M-Book clearly stating that such changes occur between semesters or enrollment periods. True and correct copies of the downgrade memoranda, related correspondence, and the University's M-Book provisions are attached as **Exhibits J–M, R**.

c. Within hours of the downgrade, Defendant Dr. Yi Yang notified me that I am "not eligible" for Graduate Assistantship based on my new "provisional status". This assistantship termination effectively eliminated my stipend, tuition remission, and health insurance— my sole sources of financial support necessary for my livelihood, maintaining full-time enrollment, and F-1 immigration status. A true and correct copy of the assistantship termination correspondence is attached as **Exhibit L**.

## III.     IMMEDIATE AND IRREPARABLE HARM

7. **Loss of Lawful Immigration Status**: Termination of my assistantship eliminated the funding source listed on my SEVIS Form I-20. Under *8 C.F.R. § 214.2(f)*, maintaining adequate funding and full-time enrollment is a mandatory condition of lawful F-1 status. This disruption places me at imminent risk of being declared out of status and having my SEVIS record terminated unless my standing and funding are promptly restored.

8. **Enrollment and Educational Disruption**: As a direct result of my downgrade to "provisional status" and resulting loss of tuition remission, on September 15, 2025, the Office of the University Bursar issued a Balance Notice for $16,300.69 (**Exhibit V**). If left unresolved, this balance will trigger automatic enrollment holds that will prevent future registration and other

critical functions, potential administrative withdrawal, and cascading consequences that further imperil my F-1 lawful immigration status.

9. **Financial Crisis and Housing Instability**: As a direct result of my downgrade to "provisional status" and resulting loss of stipend, I am now more than one month in arrears on rent, currently facing imminent eviction, and unable to meet basic living expenses, including food and groceries. These conditions threaten my housing security, physical well-being, and ability to focus on coursework and research—compounding the irreparable harm already underway.

10. **Reputational and Psychological Harm**: The "provisional status" designation places a negative notation on my academic record, inflicts reputational damage that may impair current and future academic and professional opportunities, and exacerbates psychological distress with each passing day.

11. **Loss of Standing**: If forced to leave the United States, I would lose standing to pursue this case, be unable to participate in discovery or hearings, and risk having my claims declared moot—effectively denying me an opportunity for judicial redress.

These harms, hardships, and uncertainties are ongoing, escalating, and cannot be remedied by monetary damages. They represent precisely the type of injury that Temporary Restraining Orders and Preliminary Injunctions are designed to prevent, warranting immediate judicial intervention.

## IV.     NOTICE OF SERVICE UNDER RULE 5 (ON-NOTICE PROCEEDING)

Pursuant to *Fed. R. Civ. P. 5(b)(2)(C)* and *28 U.S.C. § 1746*, I certify under penalty of perjury that on September 18, 2025, I served true and correct copies of this Declaration with Exhibits A–T, V, W attached, together with my Temporary Restraining Order and Preliminary Injunction motions, and supporting Memorandum of Law on the University of Mississippi Office of General Counsel (for the University and all official-capacity Defendants) and on each individual-capacity

5

Defendant at their respective campus office addresses by U.S. Mail, first-class, postage prepaid. Service is deemed complete upon mailing under ***Rule 5(b)(2)(C)***.

A true and correct copy of the Proof of Mailing is attached as **Exhibit X**.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of September, 2025, in Oxford, Mississippi.

_____

Ehiremen Bennard Eriakha

Plaintiff, Pro Se

1802 Jackson Ave. W., Apt. 83

Oxford, MS 38655

Tel: (662) 281-4676

Email: eriakhabernard@gmail.com

## CERTIFICATE OF SERVICE

Pursuant to ***Fed. R. Civ. P. 5(b)(2)(C), Fed. R. Civ. P. 65(b)(1)(B),*** and ***28 U.S.C. § 1746***, I certify under penalty of perjury that on September 18, 2025, I served a true and correct copy of:

- Urgent and Necessitous Renewed Motion for Temporary Restraining Order (TRO)

- Urgent and Necessitous Renewed Motion for Preliminary Injunction

- Memorandum of Law in Support of Preliminary Injunction

- Declaration of Ehiremen Bennard Eriakha in Support of TRO and Preliminary Injunction

- Notice of Service under ***Rule 5*** and, in the alternative, Certification under Rule ***65(b)(1)(B)***

- Motion for Leave to Exceed Page Limit

- Motion to Waive Security Requirement

- Motion and Notice to Correct the Record

- Declaration in Support of Motion and Notice to Correct the Record

- Verified Pleading Declaration (Verification of Complaint)

- Exhibits A–T, V, W

On the following recipients by **U.S. Mail, first-class, postage prepaid** (service complete upon mailing under ***Rule 5(b)(2)(C)***):

**The University of Mississippi and all Official-Capacity Defendants:**

- **Office of General Counsel**

  University of Mississippi,

  209 Lyceum,

  University, MS 38677

**Individual-Capacity Defendants (Campus Office Address):**

- **Dr. Yi Yang**

  Chair, Department of Pharmacy Administration

  University of Mississippi, School of Pharmacy

  232 Faser Hall,

  University, MS 38677

  yiyang@olemiss.edu

- **Dr. Marie Barnard**

  Graduate Program Coordinator, Department of Pharmacy Administration

  University of Mississippi, School of Pharmacy

  234 Faser Hall,

  University, MS 38677

  mbarnard@olemiss.edu

- **Dr. Annette Kluck**

  Dean of the Graduate School

  University of Mississippi, Graduate School

  University, MS 38677

  askluck@olemiss.edu

- **Dr. Yinan Huang**

  Faculty Member, Department of Pharmacy Administration

  University of Mississippi, School of Pharmacy

  235 Faser Hall,

  University, MS 38677

yhuang9@olemiss.edu

**Clerk of Court (for filing in the record):**

- **Clerk of Court**

U.S. District Court, Northern District of Mississippi – Oxford Division

Federal Building, 911 Jackson Avenue East

Oxford, MS 38655

(Clerk's copy includes **Exhibit U** [previously signed and stamped memorandum] and **Exhibit X** [proof of mailing]).

Courtesy copies were also transmitted by email to the above recipients on September 18, 2025.

Executed this 18th day of September, 2025, in Oxford, Mississippi.

_____

Ehiremen Bennard Eriakha

Plaintiff, Pro Se

1802 Jackson Ave. W., Apt. 83

Oxford, MS 38655

Tel: (662) 281-4676

Email: eriakhabernard@gmail.com

# APPENDIX F

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### OXFORD DIVISION

**EHIREMEN BENNARD ERIAKHA**                                  **PLAINTIFF**

v.                                                                **NO. 3:25-CV-250-DMB-RP**

**UNIVERSITY OF MISSISSIPPI, et al.**                          **DEFENDANTS**

### DEFENDANTS' RESPONSE IN OPPOSITION TO
### MOTION FOR TEMPORARY RESTRAINING ORDER

Defendants The University of Mississippi, Dr. Yi Yang, Dr. Marie Barnard, Dr. Annette

Kluck, and Dr. Yinan Huang("Defendants"), reserving all rights and defenses, file this, their

Response in Opposition to Plaintiff's Motion for Temporary Restraining Order [Doc. 15]. In

support, Defendants state:

1.      The Court should decide Defendants' Motion to Dismiss before considering

Plaintiff's motions for injunctive relief.

2.      Plaintiff has not demonstrated irreparable harm.

3.      Plaintiff will not succeed on the merits.

In support of their Motion, Defendants rely on the pleadings and papers of record in this

action and their accompanying brief.

FOR THESE REASONS, Defendants University of Mississippi, Dr. Yi Yang, Dr. Marie

Barnard, Dr. Annette Kluck, and Dr. Yinan Huang, respectfully move this Court to deny

Plaintiff's Motion for Temporary Restraining Order. Defendants request such other relief as the

Court deems appropriate under the circumstances.

Respectfully submitted, this the 2d day of October 2025.

UNIVERSITY OF MISSISSIPPI, DR. YI YANG, DR. MARIE BARNARD, DR. ANNETTE KLUCK, AND DR. YINAN HUANG

/s/ Paul B. Watkins, Jr.
PAUL B. WATKINS, JR. (MB No. 102348)
*Their Attorney*

OF COUNSEL:

MAYO MALLETTE PLLC
2094 Old Taylor Road, Suite 200
Oxford, Mississippi 38655
Telephone: (662) 236-0055
*pwatkins@mayomallette.com*

2

### CERTIFICATE OF SERVICE

I, Paul B. Watkins, Jr., the attorney for the Defendants, University of Mississippi, Dr. Yi Yang, Dr. Marie Barnard, Dr. Annette Kluck, and Dr. Yinan Huang, do certify that I have electronically filed this document in the ECF system with the Clerk of the Court which sent notification of the filing to all attorneys of record and have forwarded a copy of this document via U.S. Mail to the following:

> Ehiremen Bennard Eriakha
> 1802 Jackson Avenue West, Apt. 83
> Oxford, MS 38655
> 662-281-4676
> PRO SE

THIS, the 2d day of October 2025.

/s/ Paul B. Watkins, Jr.
PAUL B. WATKINS, JR. (MB NO. 102348)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

EHIREMEN BENNARD ERIAKHA                                    **PLAINTIFF**

v.                                                         **NO. 3:25-CV-250-DMB-RP**

UNIVERSITY OF MISSISSIPPI, et al.                          **DEFENDANTS**

## DEFENDANTS' RESPONSE IN OPPOSITION TO
## MOTION FOR PRELIMINARY INJUNCTION

Defendants The University of Mississippi, Dr. Yi Yang, Dr. Marie Barnard, Dr. Annette

Kluck, and Dr. Yinan Huang ("Defendants"), reserving all rights and defenses, file this, their

Response in Opposition to Plaintiff's Motion for Preliminary Injunction [Doc. 16]. In support,

Defendants state:

1.    The Court should decide Defendants' Motion to Dismiss before considering

Plaintiff's motions for injunctive relief.

2.    Plaintiff has not demonstrated irreparable harm.

3.    Plaintiff will not succeed on the merits.

In support of its Motion, Defendants rely on the pleadings and papers of record in this

action and their accompanying brief.

FOR THESE REASONS, Defendants University of Mississippi, Dr. Yi Yang, Dr. Marie

Barnard, Dr. Annette Kluck, and Dr. Yinan Huang, respectfully move this Court to deny

Plaintiff's Motion for Preliminary Injunction. Defendants request such other relief as the Court

deems appropriate under the circumstances.

Respectfully submitted, this the 2nd day of October 2025.

UNIVERSITY OF MISSISSIPPI, DR. YI
YANG, DR. MARIE BARNARD, DR.
ANNETTE KLUCK, AND DR. YINAN
HUANG

/s/ Paul B. Watkins, Jr.
PAUL B. WATKINS, JR. (MB No. 102348)
*Their Attorney*

OF COUNSEL:

MAYO MALLETTE PLLC
2094 Old Taylor Road, Suite 200
Oxford, Mississippi 38655
Telephone: (662) 236-0055
pwatkins@mayomallette.com

## CERTIFICATE OF SERVICE

I, Paul B. Watkins, Jr., the attorney for the Defendants, University of Mississippi, Dr. Yi Yang, Dr. Marie Barnard, Dr. Annette Kluck, and Dr. Yinan Huang, do certify that I have electronically filed this document in the ECF system with the Clerk of the Court which sent notification of the filing to all attorneys of record and have forwarded a copy of this document via U.S. Mail to the following:

> Ehiremen Bennard Eriakha
> 1802 Jackson Avenue West, Apt. 83
> Oxford, MS 38655
> 662-281-4676
> PRO SE

THIS, the 2nd day of October 2025.

> /s/ Paul B. Watkins, Jr
> PAUL B. WATKINS, JR. (MB NO. 102348)

# APPENDIX G

## United States District Court

for the

Northern District of Mississippi

Oxford Division

| | | |
|---|---|---|
| Ehiremen Bennard Eriakha | ) | Case No.   3:25-cv-00250 |
| *Plaintiff(s)* | ) | |
| **-v-** | ) | |
| | ) | |
| University of Mississippi; Dr. Yi Yang; Dr. | ) | |
| Marie Barnard; Dr. Annette Kluck; Dr. Yinan | ) | |
| Huang | ) | |
| *Defendant(s)* | ) | |

**CONSOLIDATED REPLY IN SUPPORT OF MOTION FOR TEMPORARY**

**RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

1

## I.    INTRODUCTION

Defendants' oppositions (Doc. 31–34) to Plaintiff's motion for temporary restraining order and preliminary injunction confirm, rather than contest, the need for immediate equitable relief. They do not dispute the central facts: Plaintiff, an international doctoral student with a 4.0 GPA, an unblemished record, and no history of misconduct, was summarily downgraded to provisional status and deprived of his Graduate Research Assistantship and tuition remission mere days into the semester.

Unable to reconcile these undisputed facts with the requirements of due process, Defendants retreat behind procedural abstractions—qualified immunity, sovereign immunity, and jurisdictional formalities—leaving the constitutional injury itself untouched. Such technical defenses cannot obscure what the record unmistakably demonstrates: a sequence of retaliatory, pretextual, and procedurally defective actions that stripped Plaintiff of his academic standing, livelihood, and dignity in violation of the First and Fourteenth Amendments.

The issue before this Court is not one of academic discretion, but of constitutional restraint and equitable urgency. The question is straightforward: may state officials invoke the language of academic governance to conceal retaliation, suppress protected advocacy, and disregard their own written procedures? May a public university extinguish a student's only means of subsistence and lawful status for raising good-faith concerns about fairness and mentoring integrity?

The answer, grounded in both principle and precedent, is no. The record leaves no doubt that Plaintiff's conduct was ethical, transparent, and compliant with institutional policy, while the punishment that followed was retaliatory, coercive, and constitutionally indefensible.

Immediate intervention under **Rule 65** is therefore not only warranted but imperative—to halt ongoing harm, restore the *status quo ante*, and reaffirm the principle that constitutional rights do not yield to administrative expediency. The equitable relief sought here serves not only the Plaintiff's interests but the broader integrity of constitutional governance within public higher education.

## II.    IRREPARABLE HARM

The harm at issue is neither speculative nor remote—it is immediate, concrete, and compounding. The Court has already acknowledged Plaintiff's indigence by granting *in forma pauperis* status, thereby confirming the depth of his financial vulnerability. The Graduate Research Assistantship that Defendants terminated without notice, cause, or process was Plaintiff's sole source of livelihood—the means by which he secured food, rent, health insurance, and lawful F-1 visa maintenance.

Its abrupt termination, occurring at the very outset of the semester, has inflicted a continuing injury that no post-hoc monetary remedy can redress. Plaintiff is now more than two months behind on rent and faces escalating housing instability and the imminent risk of displacement—all directly traceable to the abrupt loss of his assistantship. This is not a case of financial inconvenience; it is the deprivation of subsistence itself—the precise form of harm that courts have long recognized as irreparable per se. See **Opulent Life Church v. City of Holly Springs, 697 F.3d 279, 295 (5th Cir. 2012)**.

Out of necessity, Plaintiff and his twin brother have established a verified GoFundMe campaign to secure minimal support for food, rent, and other basic living expenses during this period of deprivation (available at *https://shorturl.at/Qzkr0*). This step underscores the immediacy of the

harm and the absence of alternative means of survival—it is not an appeal for sympathy, but factual confirmation of the ongoing human cost of Defendants' unlawful acts.

The consequences extend far beyond financial loss. The continuing deprivation of livelihood and tuition remission threatens irreversible damage to Plaintiff's academic progress, immigration status, and physical and mental wellbeing. The uncertainty surrounding his basic sustenance and educational future has caused sustained psychological distress, impairing his ability to concentrate on coursework and research—harms that deepen with each passing day and cannot be undone by later relief.

The equitable purpose of **Rule 65** is to prevent exactly this kind of cascading, multifaceted injury— where constitutional rights, educational opportunity, and the means of survival are endangered long before a final judgment can be reached. Every additional day of deprivation compounds the harm and magnifies the injustice.

To delay intervention now would be to allow irreparable harm to harden into permanent loss—a result wholly inconsistent with the equitable mandate of this Court and the constitutional values it is sworn to uphold.

## III.    LIKELIHOOD OF SUCCESS ON THE MERITS

The record—comprising contemporaneous emails, internal memoranda, and official University documents—establishes a clear, unbroken chronology linking Plaintiff's protected advocacy to the retaliatory actions that swiftly followed. Within mere weeks of Plaintiff's written appeals for procedural fairness and mentoring integrity, Defendants escalated from informal pressure to formal sanction. They first unilaterally restructured his mentoring relationship in violation of the signed Mentor–Mentee Agreement, then issued the **June 30** "disciplinary memorandum", downgraded

his academic status on **August 21**, ratified that downgrade on the morning of **August 22**, and terminated his Graduate Research Assistantship that same evening—all within a compressed window of administrative activity that directly followed his protected communications.

At no point did Defendants identify a single instance of academic deficiency, misconduct, or performance concern that could plausibly justify their actions. Each adverse measure directly contravened both the University's internal policies and the procedural safeguards guaranteed by the Fourteenth Amendment. The close temporal proximity between Plaintiff's good-faith procedural inquiries and the swift imposition of punitive measures—coupled with the absence of any legitimate academic rationale—creates a strong presumption of retaliatory motive and administrative coercion rather than bona fide academic judgment.

Taken together, these facts establish a compelling inference of retaliation, procedural due-process violations, and arbitrary deprivation of a protected property and liberty interest. The evidence easily surpasses the plausibility threshold required under **_Rule 65_**, rendering Plaintiff's likelihood of success on the merits not merely credible, but manifest.

Where the record itself reveals undisputed deviations from established policy, shifting justifications for adverse action, and a clear causal nexus between protected speech and retaliation, the merits weigh decisively in favor of equitable relief.

## IV.    BALANCE OF EQUITIES

The balance of equities in this case weighs decisively in favor of preservation, not punishment. The relief Plaintiff seeks—temporary reinstatement of his academic standing and Graduate Research Assistantship pending adjudication—imposes no extraordinary burden on the University.

It simply restores the *status quo ante* and requires Defendants to honor the procedural fairness, institutional integrity, and constitutional protections that their own policies already mandate.

By contrast, continued deprivation inflicts cascading and irreversible harm on Plaintiff's livelihood, education, and lawful immigration status. The assistantship was Plaintiff's sole means of sustenance—supporting food, housing, tuition, and visa compliance. Its ongoing denial jeopardizes not only his academic progress but his basic survival. The harm to Plaintiff is immediate and existential; the burden on Defendants is administrative and minimal.

Equity does not permit public officials to invoke procedural formality or immunity as a shield while their actions extinguish a student's means of survival and undermine constitutional guarantees. When one party faces the loss of food, housing, and lawful status, and the other faces only the duty to comply with established law, the balance of equities is not merely tilted—it is categorical.

## V.     PUBLIC INTEREST

The public interest is not advanced by silence in the face of constitutional violations. It is advanced by ensuring that public institutions—particularly universities entrusted with educating future leaders—uphold the foundational principles of fairness, transparency, and due process. Enforcing these principles protects not only the rights of this Plaintiff, but also the broader integrity of academic governance and public confidence in higher education.

When retaliation, arbitrariness, or procedural abuse are left unchecked, faith in the fairness of public education erodes, and constitutional protections lose meaning precisely where they should carry their greatest force. The rule of law demands that no public university, however esteemed, may convert ethical advocacy or policy compliance into grounds for punishment.

Granting equitable relief here would reaffirm that public universities are governed by law, not discretion; by fairness, not retaliation. It would send a clear message that constitutional norms are not aspirational ideals but binding commitments that define the legitimacy of public institutions.

In preserving those commitments, this Court would act not only in Plaintiff's interest, but in the public's enduring interest in justice, accountability, and the integrity of higher education. Upholding those values through timely intervention strengthens the very trust upon which the authority of public institutions depends.

## VI.     CONCLUSION AND RELIEF REQUESTED

Plaintiff has met, and exceeded, each element required for emergency equitable relief under ***Rule 65***. The record demonstrates a compelling likelihood of success on the merits, establishes ongoing and irreparable harm, confirms that the balance of equities overwhelmingly favors preservation over punishment, and shows that the public interest is best served by enforcing constitutional fairness and accountability within public education.

The relief sought is narrow, temporary, and restorative—not disruptive. It neither adjudicates the ultimate merits nor intrudes upon legitimate academic discretion. It merely restores the *status quo ante*, the condition that existed before the contested acts occurred, so that this Court may later resolve the issues on a full and undistorted record.

Each day of continued deprivation compounds both constitutional injury and human hardship. Equity exists to prevent precisely this—to halt irreparable harm before it calcifies into permanent loss.

WHEREFORE, for the reasons set forth above and in prior filings, Plaintiff respectfully requests that this Honorable Court:

1.  GRANT the Motion for Temporary Restraining Order and Preliminary Injunction;

2.  ORDER the immediate restoration of Plaintiff's academic standing, Graduate Research Assistantship, and tuition remission pending final adjudication; and

3.  AWARD such other and further equitable relief as justice and the Court's conscience may require.

Respectfully submitted, this 9th day of October 2025.

_____

Ehiremen Bennard Eriakha

Plaintiff, Pro se

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2025, I delivered the foregoing to the Clerk of Court for filing and served a true and correct copy by email upon:


**Paul B. Watkins**, **Esq**.

Mayo Mallette PLLC

Email: pwatkins@mayomallette.com

(cc: Brooke Jackson, bjackson@mayomallette.com)


Executed this 9th day of October, 2025, in Oxford, Mississippi.

_____

Ehiremen Bennard Eriakha

Plaintiff, pro se

1802 Jackson Ave. W., Apt. 83

Oxford, MS 38655

Tel: (662) 281-4676

Email: eriakhabernard@gmail.com

# APPENDIX H

## UNITED STATES DISTRICT COURT

for the

Northern District of Mississippi

Oxford Division

| | | |
|---|---|---|
| Ehiremen Bennard Eriakha | | Case No.    3:25-cv-00250 |
| *Plaintiff* | ) | |
| **-v-** | ) | |
| | ) | |
| | ) | |
| University of Mississippi; Dr. Yi Yang; Dr. | ) | |
| Marie Barnard; Dr. Annette Kluck; Dr. Yinan | ) | |
| Huang | ) | |
| *Defendants* | | |

**MOTION TO EXPEDITE RULING ON PENDING URGENT MOTION FOR**

**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

1

Plaintiff Ehiremen Bennard Eriakha, proceeding *pro se*, respectfully moves the Court to expedite consideration and ruling on his pending *Renewed Motion for Temporary Restraining Order and Preliminary Injunction* (***Docs. 15 & 16***), together with the accompanying *Memorandum of Law* (***Doc. 23***), *Reply in Support* (***Doc. 37***), and *Supplemental Notice of Continuing and Escalating Irreparable Harm* (***Doc. 41***).

This request is made pursuant to ***Fed. R. Civ. P. 1, 6(b)***, and ***65, 28 U.S.C. § 1657(a)***, and ***L.U. Civ. R. 7(b)(8)*** ("*Urgent and Necessitous Motions*"), and seeks no new relief, but prompt judicial attention to a fully briefed and time-sensitive motion whose efficacy depends upon timely resolution under ***Rule 65***.

## I.  Procedural Background

1. On **September 18, 2025**, Plaintiff filed his *Renewed Motion for Temporary Restraining Order and Preliminary Injunction* (***Docs. 15 & 16***), expressly styled "*URGENT AND NECESSITOUS*" pursuant to ***L.U. Civ. R. 7(b)(8)*** and supported by *verified declarations* and a ***Rule 65(b)(1)(B)*** *certification of notice*. Plaintiff subsequently filed a *Memorandum of Law* (***Doc. 23***), *Reply in Support* (***Doc. 37***), and *Supplemental Notice of Continuing and Escalating Irreparable Harm* (***Doc. 41***), thereby completing the record. The motion is fully briefed and procedurally ripe for ruling.

2. On **October 2, 2025**, the Magistrate Judge entered a *Stay Order* (***Doc. 30***). Plaintiff respectfully notes that, under ***Fed. R. Civ. P. 65*** and ***L.U. Civ. R. 72(d)***, adjudication of motions for temporary or preliminary injunctive relief lies within the authority of the District Judge. Plaintiff therefore seeks clarification that the stay does not suspend or defer consideration of the pending urgent motion, which was filed pursuant to ***Rule 65*** and expressly styled as "*Urgent and Necessitous*" under ***L.U. Civ. R. 7(b)(8)***.

3. More than six weeks have elapsed since Plaintiff filed his *Renewed Motion for Temporary Restraining Order and Preliminary Injunction* (***Docs. 15 & 16***). Plaintiff now submits this narrowly tailored motion to ensure the just, speedy, and inexpensive determination of time-sensitive equitable relief under ***Fed. R. Civ. P. 1***. The underlying motion is fully briefed, supported by verified declarations, and ripe for decision. Each day of inaction compounds the irreparable harms that ***Rule 65*** exists to prevent and risks rendering the requested relief ineffectual.

## II. Legal Basis for Expedited Consideration

1. ***Federal Rule of Civil Procedure 65(b)*** authorizes the Court to issue temporary injunctive relief where "*immediate and irreparable injury, loss, or damage will result before the adverse party can be heard in opposition*." The Rule's purpose is to preserve the status quo and prevent imminent harm that cannot be remedied through ordinary legal process before the Court has an opportunity to adjudicate the merits.

2. ***Federal Rule of Civil Procedure 6(b)*** vests the Court with discretion to shorten time for good cause shown, and ***Rule 1*** directs that the Rules be construed and administered to secure the "*just, speedy, and inexpensive determination*" of every action. Read together, these provisions embody the judiciary's equitable obligation to act promptly when the effectiveness of requested relief depends upon timing, particularly in matters arising under ***Rule 65*** where delay itself may defeat the purpose of equitable intervention.

3. ***Local Uniform Civil Rule 7(b)(8)*** provides that motions styled as "*URGENT AND NECESSITOUS*" must be promptly presented for judicial consideration. The Rule ensures that matters alleging immediate or irreparable harm receive expedited attention consistent with the

equitable principles governing injunctive relief and the Court's duty to preserve the effectiveness of time-sensitive remedies.

4. The Fifth Circuit has long recognized that delay itself may constitute irreparable injury. ***Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C., 710 F.3d 579, 585 (5th Cir. 2013)*** ("*the passage of time itself may constitute irreparable injury*"). This principle underscores that the equitable purpose of ***Rule 65*** can be defeated where time-sensitive motions remain pending without timely adjudication.

### III. Nature of the Irreparable Harm

1. As detailed in Plaintiff's verified submissions, the continued loss of his Graduate Research Assistantship, tuition remission, and academic standing has resulted in compounding, non-compensable injuries, including:

    i)   Loss of food and housing security;

    ii)  Escalating rent litigation in Lafayette County Court (***Ex. 4 to Doc. 41***);

    iii) Bursar and registrar financial holds preventing course registration and access to academic records (***Ex. 3 to Doc. 41***), thereby impairing continuous enrollment; and

    iv)  Imminent jeopardy to Plaintiff's F-1 student visa status, which depends upon continued funding and full-time enrollment.

2. These injuries are ongoing, non-compensable, and intensify with each day the motion remains unresolved. The loss of subsistence, continuous enrollment, and lawful immigration status are deprivations that cannot be remedied by monetary damages or post-hoc judicial review, and therefore warrant immediate equitable protection under ***Rule 65***.

3. Because the efficacy of equitable relief is inseparable from timing, each day without a ruling compounds the irreparable injury that *Rule 65* is designed to prevent and risks rendering the requested remedy ineffectual. Plaintiff submits this motion with full respect for the Court's docket; however, *28 U.S.C. § 1657(a)* provides that actions seeking temporary or preliminary injunctive relief are entitled to expedited consideration. Accordingly, prompt adjudication is both equitable in principle and favored by statute.

## IV. Relief Requested

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Clarify that the **October 2, 2025** Stay Order does not preclude or suspend District Judge adjudication of Plaintiff's pending *Renewed Motion for Temporary Restraining Order and Preliminary Injunction* (*Docs. 15 & 16*);

2. Pursuant to *28 U.S.C. § 1657(a)*, *Fed. R. Civ. P. 1*, *6(b)*, and *65(b)*, and *L.U. Civ. R. 7(b)(8)*, expedite consideration and ruling on the fully briefed *Renewed Motion for Temporary Restraining Order and Preliminary Injunction*, supported by *verified declarations* and *exhibits*; and

3. Grant such other and further relief as the Court deems just and proper to prevent continuing irreparable harm and to secure the just, speedy, and inexpensive determination of this action.

Respectfully submitted this 3rd day of November, 2025.

_____

Ehiremen Bennard Eriakha

5

Plaintiff, Pro Se

1802 Jackson Ave. W., Apt. 83

Oxford, MS 38655

Tel: (662) 281-4676

Email: eriakhabernard@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2025, I delivered the foregoing to the Clerk of Court for filing and served a true and correct copy by email upon:

**Paul B. Watkins**, **Esq**.

Mayo Mallette PLLC

Email: pwatkins@mayomallette.com

(cc: Brooke Jackson, bjackson@mayomallette.com)

Executed this 3rd day of November, 2025, in Oxford, Mississippi.

_____

Ehiremen Bennard Eriakha

Plaintiff, pro se

1802 Jackson Ave. W., Apt. 83

Oxford, MS 38655

Tel: (662) 281-4676

Email: eriakhab@gmail.com

# APPENDIX I

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

**EHIREMEN BENNARD ERIAKHA**                                    **PLAINTIFF**

**v.**                                    **NO. 3:25-CV-250-DMB-RP**

**UNIVERSITY OF MISSISSIPPI, et al.**                          **DEFENDANTS**

### DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION TO
### EXPEDITE RULING ON PENDING MOTION FOR TEMPORARY
### <u>RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>

Defendants The University of Mississippi, Dr. Yi Yang, Dr. Marie Barnard, Dr. Annette Kluck, and Dr. Yinan Huang ("Defendants"), reserving all rights and defenses, respond as follows to Plaintiff's Motion to Expedite Ruling on Pending Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 46]:

1.      Defendants agree that Plaintiff's motions for injunctive relief [Docs. 15, 16] are fully briefed and may be decided on the papers without a hearing.

2.      However, because Defendants' Motion to Dismiss [Doc. 28] raises jurisdictional and immunity defenses and because it is potentially dispositive, the Court should delay consideration of any motion for injunctive relief until disposition of the Motion to Dismiss. *See Pham v. Univ. of La. at Monroe*, 194 F. Supp. 3d 534, 549 n. 8 (W.D. La. 2016), *aff'd Pham v. Blaylock*, 2017 U.S. App. LEXIS 20275, *11 (5th Cir. Oct. 17, 2017) (noting that grant of dismissal based on qualified immunity required court to disregard evidence offered in support of preliminary injunction); *Arruda & Beaudoin, LLP v. Astrue*, 2011 U.S. Dist. LEXIS 113022, *2 (D. Mass. Sept. 30, 2011) (noting that issues raised in motion to dismiss will necessarily need to be resolved as part of preliminary injunction motion and that deciding motion to dismiss first will advance orderly determination of issues); *Labat-Anderson, Inc. v. United States, 346 F.*

*Supp. 2d 145*, (D.D.C. 2004) ("when presented with a motion for a preliminary injunction and a competing motion to dismiss for lack of jurisdiction, the Court must address the jurisdictional issues first, and may reach the merits of the motion for preliminary injunction only once, and only if, jurisdiction is established."); *Penn. Mun. Auths. Ass'n v. Horinko*, 292 F. Supp. 2d 95, 101 (D.D.C. 2003) ("Plaintiff's preliminary injunction motion does not take priority over defendants' motion to dismiss for lack of jurisdiction.").

3.     Because of the straightforward nature of this Response, Defendants respectfully request to be relieved of the requirement of a supporting memorandum.

FOR THESE REASONS, Defendants University of Mississippi, Dr. Yi Yang, Dr. Marie Barnard, Dr. Annette Kluck, and Dr. Yinan Huang, respectfully move this Court to deny Plaintiff's Motion to Expedite Ruling on Pending Motion for Temporary Restraining Order and Preliminary Injunction, and to rule on Defendants' Motion to Dismiss . Defendants request such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted, this the 17th day of November 2025.

> **UNIVERSITY OF MISSISSIPPI, DR. YI YANG, DR. MARIE BARNARD, DR. ANNETTE KLUCK, AND DR. YINAN HUANG**
>
> */s/ Paul B. Watkins, Jr.*
> PAUL B. WATKINS, JR. (MB No. 102348)
> *Their Attorney*

OF COUNSEL:

MAYO MALLETTE PLLC
2094 Old Taylor Road, Suite 200
Oxford, Mississippi 38655
Telephone: (662) 236-0055
*pwatkins@mayomallette.com*

**CERTIFICATE OF SERVICE**

I, Paul B. Watkins, Jr., the attorney for the Defendants, University of Mississippi, Dr. Yi Yang, Dr. Marie Barnard, Dr. Annette Kluck, and Dr. Yinan Huang, do certify that I have electronically filed this document in the ECF system with the Clerk of the Court which sent notification of the filing to all attorneys of record and have forwarded a copy of this document via E-Mail and U.S. Mail to the following:

> Ehiremen Bennard Eriakha
> 1802 Jackson Avenue West, Apt. 83
> Oxford, MS 38655
> 662-281-4676
> PRO SE

THIS, the 17th day of November 2025.

*/s/ Paul B. Watkins, Jr.*
PAUL B. WATKINS, JR. (MB NO. 102348)

# APPENDIX J

## United States District Court

for the

Northern District of Mississippi

Oxford Division

| | | |
|---|---|---|
| Ehiremen Bennard Eriakha | ) | Case No.    3:25-cv-00250 |
| *Plaintiff(s)* | ) | |
| **-v-** | ) | |
| | ) | |
| University of Mississippi; Dr. Yi Yang; Dr. | ) | |
| Marie Barnard; Dr. Annette Kluck; Dr. Yinan | ) | |
| Huang | ) | |
| *Defendant(s)* | ) | |

**PLAINTIFF'S MOTION TO PRESERVE JURISDICTION AND
ADJUDICATE PENDING EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiff respectfully advises the Court that his renewed motion for a temporary restraining order and preliminary injunction is fully briefed and ripe for decision. Plaintiff further requests that the Court retain jurisdiction and adjudicate the motion at the Court's earliest convenience.

## 1.   Ripeness of the Motion

Plaintiff's renewed motion for temporary restraining order and preliminary injunction, supported by sworn declaration and exhibits, is fully briefed and ripe for decision. No further submissions are anticipated.

## 2.   The Only Live Emergency Motion

No renewed motion for temporary restraining order or preliminary injunction is pending in Case No. **3:25-cv-00226-MPM-JMV**. Accordingly, the only emergency motion presently before either Court is Plaintiff's renewed TRO/PI in this case, which is ripe for prompt adjudication.

## 3.   Substantial Prejudice

Defense counsel has circulated a proposed "agreed order" of consolidation. Plaintiff has responded with a Notice of Non-Consent and a Supplemental Notice, explaining that consolidation at this stage would cause substantial prejudice by impeding this Court's ability to independently adjudicate the pending emergency motion. Specifically, consolidation would risk: **(a)** diverting the pending PI away from this Court and depriving Plaintiff of an independent adjudication, **(b)** creating calendaring disruptions and delay, and **(c)** collapsing distinct factual records into a single posture that invites confusion and unfairness.

## 4.   Legal Standard

Neither *Fed. R. Civ. P. 42* nor the Local Rules require this Court to defer ruling on a ripe emergency motion due to potential consolidation. Consolidation under *Rule 42(a)* is discretionary and requires balancing judicial economy against the risks of prejudice, confusion, and delay. Courts routinely decline consolidation where it would materially prejudice a party's time-sensitive request for injunctive relief, particularly when an emergency motion could be delayed or diverted to a different judge and docket. *Rule 42(b)* further authorizes the Court to segregate injunctive proceedings to "expedite and economize," underscoring that fairness must take precedence over efficiency when irreparable harm is at stake.

## 5.  Requested Relief

For these reasons, Plaintiff respectfully requests that this Court:

1.  Confirm that it will retain jurisdiction to decide the fully submitted renewed motion for temporary restraining order and preliminary injunction;

2.  Promptly adjudicate that motion; and

3.  Deny any request to stay or defer consideration of the motion based on anticipated consolidation.

A proposed order is submitted herewith.

Respectfully submitted this 25th day of September, 2025.

_____

Ehiremen Bennard Eriakha

Plaintiff, Pro Se

1802 Jackson Ave. W., Apt. 83

Oxford, MS 38655

Tel: (662) 281-4676

Email: eriakhabernard@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2025, I delivered the foregoing to the Clerk of Court for

filing and served a true and correct copy by email upon:


**Paul B. Watkins**, **Esq**.

Mayo Mallette PLLC

Email: pwatkins@mayomallette.com

(cc: Brooke Jackson, bjackson@mayomallette.com)


Executed this 25th day of September, 2025, in Oxford, Mississippi.

_____

Ehiremen Bennard Eriakha

Plaintiff, pro se

1802 Jackson Ave. W., Apt. 83

Oxford, MS 38655

Tel: (662) 281-4676

Email: eriakhabernard@gmail.com

# APPENDIX K

## United States District Court

for the

Northern District of Mississippi

Oxford Division

| | | |
|---|---|---|
| Ehiremen Bennard Eriakha | ) | Case No.   3:25-cv-00250 |
| *Plaintiff(s)* | ) | |
| **-v-** | ) | |
| | ) | |
| University of Mississippi; Dr. Yi Yang; Dr. | ) | |
| Marie Barnard; Dr. Annette Kluck; Dr. Yinan | ) | |
| Huang | ) | |
| *Defendant(s)* | ) | |

**PLAINTIFF'S SUPPLEMENTAL NOTICE REGARDING RIPENESS OF**

**RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND**

**PRELIMINARY INJUNCTION**

Plaintiff respectfully files this Supplemental Notice to ensure the record accurately reflects the procedural posture of his pending emergency motion.

1. Plaintiff's renewed motion for a temporary restraining order and preliminary injunction is fully submitted and ripe for decision by this Court.

2. No renewed motion for a temporary restraining order or preliminary injunction is pending in Case No. **3:25-cv-00226-MPM-JMV**. The only live emergency motion before either Court is Plaintiff's renewed TRO/PI in this action, properly before this Court for adjudication.

3. Plaintiff has separately filed a Notice of Non-Consent to Consolidation, explaining that Defendants' proposal would substantially prejudice Plaintiff by impeding this Court's timely adjudication of the pending emergency motion.

4. Plaintiff continues to suffer irreparable harm as set forth in his motion and declaration, and each day of delay compounds those injuries.

5. Plaintiff respectfully requests that this Court adjudicate his renewed TRO/PI motion without delay, notwithstanding any pending or anticipated request for consolidation, in order to prevent further irreparable harm.

Respectfully submitted this 25th day of September, 2025.

_____

Ehiremen Bennard Eriakha

Plaintiff, Pro Se

1802 Jackson Ave. W., Apt. 83

Oxford, MS 38655

2

Email: eriakhabernard@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2025, I delivered the foregoing to the Clerk of Court for filing and served a true and correct copy by email upon:


**Paul B. Watkins**, **Esq**.

Mayo Mallette PLLC

Email: pwatkins@mayomallette.com

(cc: Brooke Jackson, bjackson@mayomallette.com)


Executed this 25th day of September, 2025, in Oxford, Mississippi.

_____

Ehiremen Bennard Eriakha

Plaintiff, pro se

1802 Jackson Ave. W., Apt. 83

Oxford, MS 38655

Tel: (662) 281-4676

Email: eriakhabernard@gmail.com

# APPENDIX L

## UNITED STATES DISTRICT COURT

for the

Northern District of Mississippi

Oxford Division

Ehiremen Bennard Eriakha                    Case No.    3:25-cv-00250

*Plaintiff(s)*

-v-

University of Mississippi; Dr. Yi Yang; Dr.

Marie Barnard; Dr. Annette Kluck; Dr. Yinan

Huang

)
)
)
)
)
)
)

*Defendant(s)*

**SUPPLEMENTAL NOTICE OF CONTINUING AND ESCALATING**

**IRREPARABLE HARM**

1

Pursuant to *Federal Rule of Civil Procedure 65(b)(1)(A)*, Plaintiff respectfully submits this Supplemental Notice to apprise the Court of recent, documented developments that materially intensify the irreparable harm described in Plaintiff's pending Motion for Temporary Restraining Order and Preliminary Injunction (**Doc. 15, 16**) and Consolidated Reply (**Doc. 39**).

## I.      Purpose of Filing

This filing is made solely to ensure that the record before the Court reflects the current and escalating nature of Plaintiff's harm arising from Defendants' ongoing deprivation of his Graduate Research Assistantship, tuition remission, and academic standing. These new events, occurring after the filing of the pending motion, further substantiate the urgency and necessity of equitable relief under *Rule 65*.

## II.      Recent Developments Demonstrating Escalation of Harm

### 1.   Second Bursar Notice – Institutional Financial Hold (Exhibit 03).

On **October 15, 2025**, the University Bursar's Office issued a Second Notice reflecting an unpaid balance of $16,985.73 and confirming the placement of a financial hold on Plaintiff's student account. The hold prevents course registration and transcript access, directly jeopardizing Plaintiff's academic progress and lawful F-1 visa status. These consequences stem solely from Defendants' downgrade of Plaintiff's academic status and abrupt termination of his assistantship and tuition remission without cause.

### 2.   Pending Rent Complaint – Housing Instability (Exhibit 04).

Also on **October 15, 2025**, Plaintiff's landlord filed a civil rent complaint in the County Court of Lafayette County, seeking over $10,000 in back rent and statutory double rent penalties under *Miss. Code Ann. § 89-8-45*. This development demonstrates that the loss of assistantship income

has progressed from financial hardship to active litigation, placing Plaintiff's housing and personal security at immediate risk.

Taken together, these events reflect a worsening and compounding pattern of academic, financial, and legal harm—each directly traceable to Defendants' continued deprivation of Plaintiff's livelihood and institutional support.

## III.    Request for Judicial Consideration

Plaintiff submits this Notice not to advance additional argument, but to preserve the factual record and assist the Court in assessing the continuing urgency of the pending motion.

Plaintiff respectfully requests that the Court:

1. Take judicial notice of the attached *Exhibit 03* (Second Bursar Notice) and *Exhibit 04* (Pending Rent Complaint); and

2. Consider these developments in adjudicating the pending Motion for Temporary Restraining Order and Preliminary Injunction, given the documented and escalating nature of the ongoing harm.

Respectfully submitted this 17th day of October 2025.

_____

Ehiremen Bennard Eriakha

Plaintiff, Pro Se

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2025, I delivered the foregoing to the Clerk of Court for filing and served a true and correct copy by email upon:


**Paul B. Watkins**, **Esq**.

Mayo Mallette PLLC

Email: pwatkins@mayomallette.com

(cc: Brooke Jackson, bjackson@mayomallette.com)


Executed this 17th day of October, 2025, in Oxford, Mississippi.

_____

Ehiremen Bennard Eriakha

Plaintiff, pro se

1802 Jackson Ave. W., Apt. 83

Oxford, MS 38655

Tel: (662) 281-4676

Email: eriakhabernard@gmail.com

# APPENDIX M

## IN THE UNITED STATES DISTRICT COURT

**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**

**OXFORD DIVISION**

| | |
|---|---|
| **OMOKHODION ALFRED ERIAKHA** | **PLAINTIFF** |
| **)** | |
| **v.** | **) CIVIL ACTION NO.: 3:25-cv-226-MPM-JMV** |
| **)** | |
| **UNIVERSITY OF MISSISSIPPI, ET AL.** | **DEFENDANTS** |

*Consolidated With*

| | |
|---|---|
| **EHIREMEN BENNARD ERIAKHA** | **PLAINTIFF** |
| **)** | |
| **v.** | **) CIVIL ACTION NO.: 3:25-cv-250-DMB-RP** |
| **)** | |
| **UNIVERSITY OF MISSISSIPPI, ET AL.** | **DEFENDANTS** |

**NOTICE OF IRREPARABLE HARM**

**(Filed by Plaintiff Ehiremen Bennard Eriakha)**

## I. Introduction

1. Plaintiff Ehiremen Bennard Eriakha, *pro se*, respectfully submits this *Notice of Irreparable Harm* pursuant to **Fed. R. Civ. P. 65** and **28 U.S.C. § 1657(a)** to apprise the Court of material developments directly affecting the pending motions for temporary restraining order and preliminary injunction (**Docs. 15 & 16**).

2. This filing is made to ensure the Court's immediate awareness of newly realized harms that substantively confirm the urgency and necessity of timely injunctive relief.

## II. Irreparable Harm

1. On **December 12, 2025**, Plaintiff received a formal letter from Dr. Annette S. Kluck, Dean of the Graduate School, permanently terminating his enrollment in the Ph.D. program in Pharmaceutical Sciences (Pharmacy Administration), effective **December 15, 2025**, and reclassifying his student status as "non-degree seeking."

   *A true and correct copy of the letter is attached as **Exhibit 05**.*

2. This action immediately extinguishes Plaintiff's eligibility for tuition remission, graduate-assistantship compensation, and programmatic academic standing, thereby constituting permanent removal from the University's doctoral program and termination of all attendant privileges, credentials, and financial supports.

3. The expulsion occurred while Plaintiff's emergency motions for injunctive relief remain pending and unresolved. It therefore substantiates the precise harms identified in those motions—including loss of livelihood, tuition support, and educational status—all of which have now fully materialized and continue to compound as direct consequences of the Court's prolonged non-adjudication of Plaintiff's emergency filings.

2

### III. Conclusion

1. Plaintiff submits this Notice solely to ensure the Court's immediate awareness of these material developments and to preserve an accurate and contemporaneous procedural record relevant to his pending motions for emergency relief.

Respectfully submitted this 12th day of December, 2025.

_____

Ehiremen Bennard Eriakha

Plaintiff, Pro Se

1802 Jackson Ave. W., Apt. 83

Oxford, MS 38655

Tel: (662) 281-4676

Email: eriakhabernard@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on December 12, 2025, I delivered the foregoing to the Clerk of Court for filing and served a true and correct copy by email upon:

**Paul B. Watkins**, **Esq**.

Mayo Mallette PLLC

Email: pwatkins@mayomallette.com

(cc: Brooke Jackson, bjackson@mayomallette.com)

Executed this 12th day of December, 2025, in Oxford, Mississippi.

_____

Ehiremen Bennard Eriakha

Plaintiff, pro se

1802 Jackson Ave. W., Apt. 83

Oxford, MS 38655

Tel: (662) 281-4676

Email: eriakhabernard@gmail.com



# APPENDIX N

December 12, 2025

Dear Ehiremen (Bennard) Eriakha (#10955677),

On August 22, 2025, I notified you that you would be placed on provisional status and that you were required to meet the requirements to attain full standing within 9 credit hours. Those requirements were specified in an email sent to you on August 21, 2025.

On December 6, 2025, your program notified me that you had not met the requirements to return to full standing. Thus, your status will be changed to non-degree seeking effective December 15, 2025. This means that you are no longer a student in the Ph.D. program in Pharmaceutical Sciences with an emphasis in Pharmacy Administration.

You are allowed apply to admission to other programs should you wish to do so (note, this is not a guarantee of admission to another program). Should you wish to enroll in additional courses, I encourage you to consult policies on options for enrollment for "non-degree seeking" students. It is important to understand that only a limited number of credits earned under "non-degree seeking" status can be counted towards a degree, and you will not be eligible for financial aid including graduate assistantships. Similarly, should you wish to apply to another degree program, I encourage you to explore whether any courses you already completed would count towards degree requirements.

In the event that you do not enroll in additional courses in the spring, your status will be converted to "inactive." In such a case, you would need to reapply to the university in order to enroll in any subsequent term.

I regret that this is likely not the news you were hoping to receive. I wish you well moving forward.

Sincerely,

Annette S. Kluck, Ph.D.
Dean of the Graduate School
Professor of Leadership and Counselor Education
University of Mississippi

Cc:    Dr. Marie Barnard
       Dr. Yi Yang
       Ms. Robin Wiebe Bourgeois

 Gmail

# APPENDIX O

eriakha b <eriakhab@gmail.com>

---

## Fwd: Change in Status Notification

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>                    Sat, Dec 13, 2025 at 12:05 PM
To: eriakha b <eriakhab@gmail.com>

---------- Forwarded message ---------
From: **Yi Yang** <yiyang@olemiss.edu>
Date: Fri, Dec 12, 2025, 3:18 PM
Subject: FW: Change in Status Notification
To: eberiakh@go.olemiss.edu <eberiakh@go.olemiss.edu>
Cc: Marie Barnard <mbarnard@olemiss.edu>, Jen Blakley <jmblakle@olemiss.edu>

Dear Bennard,

Given the change of your status, please return the following items to the department next week.

1. Key to Faser 211 and desk keys.
2. Department laptop (UM #227399).

Thank you for your attention to this matter.

Best, Yi

Yi Yang, MD, PhD

Chair and Professor

Department of Pharmacy Administration

(662) 915 1062

225 Faser Hall

---

**From:** Annette Kluck <askluck@olemiss.edu>
**Sent:** Friday, December 12, 2025 9:20 AM
**To:** eberiakh@go.olemiss.edu
**Cc:** Marie Barnard <mbarnard@olemiss.edu>; Yi Yang <yiyang@olemiss.edu>; Robin Wiebe Bourgeois <rawiebe@olemiss.edu>
**Subject:** Change in Status Notification

Case: 25-60700        Document: 22      Page: 161      Date Filed: 12/23/2025

Dear Ehiremen (Bennard) Eriakha,

[Quoted text hidden]

---

📄 **Status Change Bennard Eriakha.pdf**
115K

 Gmail

**eriakha b <eriakhab@gmail.com>**

## Fwd: Change in Status Notification

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>                    Tue, Dec 16, 2025 at 12:07 PM
To: eriakha b <eriakhab@gmail.com>

---------- Forwarded message ---------
From: **Yi Yang** <yiyang@olemiss.edu>
Date: Mon, Dec 15, 2025, 12:55 PM
Subject: RE: Change in Status Notification
To: eberiakh@go.olemiss.edu <eberiakh@go.olemiss.edu>
Cc: Marie Barnard <mbarnard@olemiss.edu>, Jen Blakley <jmblakle@olemiss.edu>, Barbara Neyses
<bkneyses@olemiss.edu>


Dear Bennard,


As the semester is ending and we may not always be in our offices, please return the keys and the
department laptop to the front desk of the School of Pharmacy Dean's Office, located on the first
floor of the Thad Cochran Research Center. These items should be returned on either Tuesday or
Wednesday afternoon this week between 1-4 pm.


Thank you for your attention to this matter.


Best, Yi


Yi Yang, MD, PhD

Chair and Professor

Department of Pharmacy Administration

(662) 915 1062

225 Faser Hall


**From:** Yi Yang
**Sent:** Friday, December 12, 2025 3:18 PM
**To:** eberiakh@go.olemiss.edu
**Cc:** Marie Barnard <mbarnard@olemiss.edu>; Jen Blakley <jmblakle@olemiss.edu>
**Subject:** FW: Change in Status Notification


Dear Bennard,

[Quoted text hidden]

 **APPENDIX P**                                          eriakha b <eriakhab@gmail.com>

---

## Fwd: F1 status

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>                    Mon, Dec 15, 2025 at 4:57 PM
To: eriakha b <eriakhab@gmail.com>

---------- Forwarded message ---------
From: **Jean Robinson** <jcrobins@olemiss.edu>
Date: Mon, Dec 15, 2025, 3:59 PM
Subject: F1 status
To: eberiakh@go.olemiss.edu <eberiakh@go.olemiss.edu>

Dear Ehiremen,

Our office has been informed that you are no longer in the PhD program and have been given admission in the nondegree category. This means a new I-20 is needed. To do this, we need to collect updated financial documentation from you that shows the ability to meet the cost of attendance for the nondegree program. This must be received by January 5th in order to meet the reporting requirements and avoid the termination of your F-1 status.  Information about the cost of attendance is at: https://olemiss.box.com/s/bv48pn8f08o7nkmqrc2n3fm53rkwnsu2 To submit it, choose the New Degree Level request in the Control Center of your isss.olemiss.edu account and follow the steps there.

If you will not be continuing enrollment here, but are planning to go to another school in the U.S.,  January 5th is also the date by which we'd need to release your SEVIS record to the other school. For this, there is a SEVIS transfer out request that you would submit to us in your isss.olemiss.edu account.

Please let me know if you have any questions.

**Jean Robinson**
Director
The University of Mississippi
Office of Global Engagement- ISSS
331 Martindale-Cole
University, MS 38677
U.S.A.
(662) 915-7404
jcrobins@olemiss.edu | https://international.olemiss.edu/